# In re G-N-C-, Respondent

*Decided September 17, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) A decision by the Immigration and Naturalization Service to institute removal or other proceedings, or to cancel a Notice to Appear or other charging document before jurisdiction vests with the Immigration Judge, involves the exercise of prosecutorial discretion and is not a decision that the Immigration Judge or this Board may review.

(2) Once the charging document is filed with the Immigration Court and jurisdiction is vested in the Immigration Judge, the Service may move to terminate the proceedings, but it may not simply cancel the charging document. The Immigration Judge is not required to terminate proceedings upon the Service's invocation of prosecutorial discretion but rather must adjudicate the motion on the merits according to the regulations at 8 C.F.R. § 239.2 (1998).

(3) The Immigration Judge and the Board of Immigration Appeals lack jurisdiction to review a decision of the Immigration and Naturalization Service to reinstate a prior order of removal pursuant to section 241(a)(5) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(5) (Supp. II 1996).

Pro se

D. Allen Kenny, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, COLE, MATHON, GUENDELSBERGER, JONES, and GRANT, Board Members. Concurring and Dissenting Opinion: ROSENBERG, Board Member.

MATHON, Board Member:

The respondent has filed both a motion to reopen his 1991 deportation proceedings and an appeal from his 1997 removal proceedings. The motion to reopen will be denied, and the appeal will be dismissed.

## I. ISSUES

This case presents three issues. The first is whether an Immigration

Judge is required to grant a motion by the Immigration and Naturalization Service to terminate removal proceedings based on prosecutorial discretion when the alien is opposed to termination. The second issue is whether the Board has jurisdiction to review a decision by the Service to reinstate a prior order of removal or deportation pursuant to section 241(a)(5) of the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(5) (Supp. II 1996). The third issue is whether the Board has jurisdiction to entertain a motion to reopen proceedings following the respondent's deportation from the United States pursuant to those proceedings.

## II. PROCEDURAL HISTORY

This case first came before the Board on appeal from a September 26, 1990, order of deportation entered by an Immigration Judge. On May 8, 1991, we dismissed the appeal, finding the respondent, a native and citizen of Nigeria, deportable under section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(4) (1988), as an alien convicted of a crime involving moral turpitude. The respondent had been convicted, on June 13, 1988, in the United States District Court for the Eastern District of North Carolina, of four counts of mail fraud and four counts of receiving mail addressed to an assumed name. For this conviction, which was affirmed in the United States Court of Appeals for the Fourth Circuit on June 15, 1989, the respondent was sentenced to 30 months' imprisonment.

Having found the respondent deportable, we further found him ineligible for adjustment of status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (1988), because he did not submit any evidence that he was the beneficiary of an approved visa petition. The respondent had married a United States citizen and was granted conditional permanent resident status on May 18, 1987, but that status was terminated effective May 18, 1989, when the respondent and his wife failed to apply to have the conditional basis of the status lifted. As the respondent was ineligible for relief from deportation, we dismissed his appeal.

The respondent filed a motion to reopen with the Board on May 21, 1991, seeking approval of his visa petition. We denied the motion on June 13, 1991, noting that the Board is not authorized to adjudicate relative visa petitions. 8 C.F.R. § 3.1(b) (1991). The respondent was deported 5 months later on November 13, 1991. He apparently reentered the United States sometime in 1995.

On May 5, 1997, the Immigration and Naturalization Service issued the respondent a Notice to Appear (Form I-862) alleging that he was subject to removal from the United States under section 212(a)(6)(A)(I) of the Act, 8 U.S.C. § 1182(a)(6)(A)(I) (Supp. II 1996), in that he was present in this country without being admitted or paroled. The Notice to Appear was filed

with the Immigration Court in El Paso, Texas, on May 8, 1997. On May 14, 1997, the Service moved to terminate the removal proceedings, informing the Immigration Judge that the Service intended, pursuant to section 241(a)(5) of the Act, to reinstate the deportation order previously entered against the respondent in 1991. The Immigration Judge ordered removal proceedings terminated on May 15, 1997, stating in his order that there was no opposition from the parties to terminate the proceedings.

On May 16, 1997, the Service issued the respondent a Notice of Intent/Decision to Reinstate Prior Order, determining that the respondent was subject to a final order of deportation, that he was previously deported on November 13, 1991, and that he unlawfully reentered the United States in December 1995. The notice advised the respondent of his right to contest the determinations by making a written or oral statement to an immigration officer. The respondent refused to sign the notice, and the decision to reinstate the prior deportation order became final that same day on May 16, 1997.

The respondent appealed, arguing that he was not allowed an opportunity to contest the motion to terminate proceedings and that, contrary to the comments in the order, he was opposed to termination. The respondent stated that he wished to appear before the Immigration Judge and pursue any relief available to him. He further stated that he was deported in 1991 while his case was still under review in federal court, that he sought advance permission from the Attorney General to enter the United States, and that upon his arrival in New York in 1995, he was inspected and admitted when he presented his passport and green card. For its part, the Service argues that the appeal should be dismissed because (1) the Service has exclusive authority to control the prosecution of deportable aliens in Immigration Court, citing *Matter of U-M-*, 20 I&N Dec. 327 (BIA 1991), and other cases; and (2) reinstatement of the prior order of deportation is *required* by section 241(a)(5) of the Act and 8 C.F.R. § 241.8 (1998) and is unreviewable by this Board.

On November 12, 1996, the respondent also filed a motion to reopen his 1991 deportation proceedings with the Board. The Service asks that the motion to reopen be dismissed as untimely in accordance with 8 C.F.R. § 3.2(c)(2) (1998).

## III. THE REMOVAL PROCEEDINGS

### A. Termination of Proceedings

We first consider the respondent's argument that the Immigration Judge erred in terminating removal proceedings at the request of the Service. The regulations allow a Service officer either to (1) cancel a Notice to Appear or (2) move for its dismissal once it is pending before the Immigration Judge or the Board on the ground that, among other reasons, the Notice to Appear was improvidently issued or "[c]ircumstances of the case have changed

after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government." 8 C.F.R. §§ 239.2(a)(7), (c) (1998).

We recognize that the decision to institute deportation proceedings involves the exercise of prosecutorial discretion and is not a decision which the Immigration Judge or the Board may review. *Matter of Ramirez-Sanchez*, 17 I&N Dec. 503 (BIA 1980). Likewise, a Service officer authorized to issue a Notice to Appear has complete power to cancel such notice prior to jurisdiction vesting with the Immigration Judge. 8 C.F.R. § 239.2(a). However, after commencement of proceedings in the Immigration Court, Service counsel "may move for dismissal of the matter on the grounds set out [in] this section." 8 C.F.R. § 239.2(c). This language marks a clear boundary between the time prior to commencement of proceedings, where a Service officer has decisive power to cancel proceedings, and the time following commencement, where the Service officer merely has the privilege to move for dismissal of proceedings. By this distinction, the regulation presumably contemplates not just the automatic grant of a motion to terminate, but an informed adjudication by the Immigration Judge or this Board based on an evaluation of the factors underlying the Service's motion. *Matter of Vizcarra-Delgadillo*, 13 I&N Dec. 51 (BIA 1968); *see also Matter of Wong*, 13 I&N Dec. 701 (BIA 1971) (stating that Service officials may move the Immigration Judge for termination of proceedings as a matter of prosecutive discretion); *cf. Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974) (finding that the Service motion to terminate, if granted, would benefit the alien, and assuming there would be no opposition from the alien's attorney).

In *Matter of Vizcarra-Delgadillo, supra*, the Board held that the Immigration Judge has authority to terminate deportation proceedings as "improvidently begun" even after a deportation order has become final. However, in that case both the Service and the respondent, represented by counsel, agreed to the motion to dismiss, and the Board found that the district director's prosecutorial judgment, that deportation proceedings were improvidently begun, was reasonable and proceedings should be terminated. The Board left for another day the more complicated question of whether the Immigration Judge was required to grant a motion to terminate by the Service, when the alien was opposed. We conclude that a Service motion to terminate proceedings must be adjudicated on the record and pursuant to the regulations, as would any other motion presented to the Immigration Judge or this Board.[1] To the extent that these proceedings were

---

[1] The Service's motion to terminate proceedings does not appear to have been served on the respondent, so he did not even have an opportunity to respond. *See Matter of Gibson*, 16 I&N Dec. 58 (BIA 1976) (stating that in order to ensure fair and complete consideration of the proceedings before this Board, copies of all submissions filed in connection therewith must be served on opposing parties); *see also* 8 C.F.R. § 3.2(g)(1) (1998),

terminated without considering arguments from both sides, the Immigration Judge erred.

## B. Prejudice

Having found that the respondent's removal proceedings were improperly terminated without notice, we are left with the question whether the respondent suffered any prejudice from the termination. We find that he did not.

The violation of a regulatory requirement invalidates a proceeding only where the regulation or procedure provides a benefit to the alien and the violation prejudiced the interest of the alien which was to be protected by the regulation. *Matter of Hernandez*, 21 I&N Dec. 224 (BIA 1996). The requirement that an alien be served with motions, be given notice of actions, and have the opportunity to respond is certainly a benefit to the alien. However, the lack of such a right in this case did not result in prejudice to the respondent, since the arguments raised by the respondent on appeal would not change the outcome of the case.

The respondent first claims that he was deported in 1991 within the time allowed for filing an appeal in federal court. That is not the case. The respondent was issued an administratively final order of deportation on May 8, 1991. He was not deported until November 11, 1991, more than 6 months after his appeal was dismissed by the Board. He was therefore not deported within the time allowed for the taking of an appeal to the court of appeals. Section 106(a)(1) of the Act, 8 U.S.C. § 1105a(a)(1) (Supp. III 1991). Further, the Service presents evidence that the United States Court of Appeals for the Fifth Circuit denied the respondent's petition for review of his deportation order on October 29, 1991. Finally, we note that an alien may collaterally attack a final order of exclusion or deportation in a subsequent proceeding only upon a showing that the prior order resulted in a gross miscarriage of justice. *Matter of Roman*, 19 I&N Dec. 855 (BIA 1988). The record does not reveal a miscarriage of justice in the prior proceedings or in the respondent's removal from this country.

The respondent next argues that he is not subject to summary removal under section 240 of the Act, 8 U.S.C. § 1229a (Supp. II 1996), for being inadmissible under section 212(a)(6) of the Act, because he can prove that he has been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." Section 235(b)(1)(A)(iii) of the Act, 8 U.S.C. § 1225(b)(1)(A)(iii) (Supp. II 1996). The respondent does not explain how this provision applies to him, however, because the Service is not trying to summarily remove him pursuant to section 235(b)(1)(A)(iii) of the Act. Rather, the Service seeks to remove the respondent under a reinstated order pursuant to section 241(a)(5) of the Act.

The respondent also argues generally that he wants to pursue relief before the Immigration Judge, but he does not specify for what relief he is eligible to apply. In summary, the respondent does not explain how he was prejudiced by the Immigration Judge's decision to terminate proceedings. We are therefore not satisfied that any useful purpose would be served by remanding this case. *See Matter of Hernandez, supra.*


## IV. THE REINSTATEMENT OF THE PRIOR ORDER

The Service asks the Board to summarily dismiss the appeal because the respondent is subject to a final reinstated order of deportation. Section 241(a)(5) of the Act states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry.

Attached to the Service's motion for summary dismissal is a copy of the May 16, 1997, Notice of Intent/Decision to Reinstate Prior Order. The notice states that the respondent is subject to a previous order of removal entered January 9, 1986 (which is actually the date the respondent was first admitted to the United States as a nonimmigrant student), and effective on May 29, 1991 (although the final order of deportation was actually entered by the Board on May 8, 1991). The notice further states that the respondent was deported on November 13, 1991, and that he reentered unlawfully in December 1995. The notice advised the respondent that he is removable as an alien who has illegally reentered the United States after having been previously removed while under an order of deportation and is therefore subject to removal by reinstatement of the prior order. The notice advised the respondent that he could contest the determination by making a written or oral statement to an immigration officer. He was advised that he did not have a right to a hearing before an Immigration Judge. The respondent refused to sign the form, and the immigration officer accordingly found the respondent subject to removal through reinstatement of the prior order under section 241(a)(5) of the Act.[2]

---

[2]Pursuant to section 101(g) of the Act, 8 U.S.C. § 1101(g) (Supp. II 1996), "[A]ny alien ordered deported or removed (whether before or after the enactment of this Act) who has left the United States, shall be considered to have been deported or removed in pursuance of law . . . ."

"An alien who illegally reenters the United States after having been removed, or having departed voluntarily, while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order. The alien has no right to a hearing before an Immigration Judge in such circumstances. In establishing whether an alien is subject to this section, the immigration officer shall determine" (1) whether the alien has been subject to a prior order of removal, (2) the identity of the alien (in disputed cases, verification of identity shall be accomplished by a fingerprint check), and (3) whether the alien unlawfully reentered the United States. 8 C.F.R. § 241.8(a) (1998).

The respondent challenges the propriety of the reinstated 1991 order. He claims that he reentered the United States with his previously issued green card, that he received the consent of the Attorney General, and that he was inspected and admitted. Conversely, the Service argues that the appeal should be summarily dismissed because the respondent has been issued a final reinstated order, which the Board has no jurisdiction to review. The Service supports its motion with a certified records search dated October 1996 that revealed no record of permission from the Attorney General allowing the respondent to reenter within 5 years of deportation. Fingerprint comparisons verified that the respondent is the same person previously deported. Further, the Service attaches a May 20, 1997, record of conviction against the respondent from the United States District Court for the District of New Mexico, for reentry after deportation, pursuant to 8 U.S.C. §§ 1326(a)(1) and (2) (Supp. II 1996). He was sentenced to a 3-year term of probation. The respondent claims this conviction is on direct appeal, but he submits no evidence of an appeal, and his conviction was entered following a plea of guilty. He claims that because his conviction is not final, and because he has a motion to reopen pending before the Board, he is not subject to removal.

The threshold question is whether we have jurisdiction to consider the challenges to the reinstated order. We conclude that we do not have authority to review the Service officer's findings. The plain language of the statute and the regulation preclude a hearing by the Immigration Judge, and consequently, this Board. The Board's appellate jurisdiction is defined by the regulations, and unless the regulations affirmatively grant us review power in a particular matter, we have no appellate jurisdiction over it. *Matter of Sano*, 19 I&N Dec. 299 (BIA 1985); 8 C.F.R. § 3.1 (1998). We therefore find that we lack any jurisdiction to consider challenges to a reinstated order of deportation under section 241(a)(5) of the Act.[3]

---

[3]We render no opinion in this decision as to whether the Service even has the option of placing an alien in removal proceedings when the alien is subject to a reinstated order pursuant to section 241(a)(5) of the Act. Neither do we address whether the Service can remove an alien pursuant to a reinstated order when removal proceedings are pending before the Immigration Judge or the Board.

## V. THE MOTION TO REOPEN

With regard to the respondent's motion to reopen his 1991 deportation proceedings, we conclude that the Board lacks jurisdiction over a motion to reopen after the respondent's departure from the United States pursuant to a final order of deportation. The record reflects that the respondent was deported on November 13, 1991. "A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States." 8 C.F.R. § 3.2(d); *see also Matter of Okoh*, 20 I&N Dec. 864 (BIA 1994) (finding that once the Board's order of deportation was executed, the proceedings were brought to finality, and the Board lacks jurisdiction to act on a motion to reopen).

## VI. CONCLUSIONS

We conclude that an Immigration Judge is not required to terminate removal proceedings upon a Service motion to terminate based on prosecutorial discretion. Rather, once the Order to Show Cause or Notice to Appear is filed with the Immigration Court, the decision to terminate proceedings is no longer solely within the Service's prosecutorial discretion, but must be adjudicated as any other motion before the Immigration Judge.

Further, we conclude that the Board does not have jurisdiction to review a decision by the Service to reinstate a prior order of deportation pursuant to section 241(a)(5) of the Act. Finally, we conclude that the Board lacks jurisdiction to entertain a motion to reopen proceedings following the respondent's deportation from the United States pursuant to those proceedings.

Accordingly, the following orders will be entered.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** The motion to reopen is denied for lack of jurisdiction.

**FURTHER ORDER:** The July 30, 1997, order of the Board staying deportation is vacated.

Vice Chairman Mary Maguire Dunne and Board Members Lauri Filppu and Lori S. Scialabba did not participate in the decision in this case.

*CONCURRING AND DISSENTING OPINION:* Lory D. Rosenberg, Board
Member

I respectfully concur in part and dissent in part.

We are faced with a somewhat unique situation involving a respondent

who first was served with an Order to Show Cause and Notice of Hearing (Form I-221) on September 5, 1996, and then was served with a Notice to Appear on May 5, 1997. The Notice to Appear (Form I-862), which was later filed with the Immigration Court on May 8, 1997, alleges that the respondent is an "alien present in the United States who has not been admitted or paroled [who] entered the United States at or near New York City, New York on or about December 1995" and is subject to removal under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (Supp. II 1996). As it appears to turn out, the respondent originally was admitted to the United States in 1986 as a nonimmigrant student, obtained lawful permanent resident status in 1987 based on his marriage to a United States citizen, failed to petition jointly with his spouse to have the condition on his residence removed, and was deported based on a conviction for a crime of moral turpitude in 1991.

The Immigration and Naturalization Service, discovering the prior deportation and concluding that it had exclusive authority under the statute and regulations to reinstate the original order, moved to terminate the removal proceedings, and the Immigration Judge allowed the motion without notice to the respondent. On appeal, the respondent contends he never received notice of the motion to terminate the removal proceedings, never received a hearing, and contests the allegation that he was not inspected and admitted at the time of his 1995 entry, claiming that he filed an application for permission to reenter following deportation. The complex issues presented by this appeal are both jurisdictional and substantive, and they require an interpretation of the current statute and past precedent decisions, as well as the determination of facts particular to the respondent's situation.[1]

I concur with the majority's conclusion that according to 8 C.F.R. § 239.2 (1998), after the Service has filed a Notice to Appear with the Immigration Court and proceedings have commenced pursuant to 8 C.F.R. § 3.14 (1998), jurisdiction vests initially with the Immigration Judge and, subsequently, if an appeal is taken, with this Board. Consequently, as the Service may not cancel, but only move for dismissal of the proceedings, I agree that the Immigration Judge erred in denying the respondent both notice and an opportunity to be heard on the motion of the Service, which sought to terminate the removal proceedings it had initiated, and that the regulation conferring such jurisdiction contemplates, not an automatic grant of the motion, but "an informed adjudication by the Immigration Judge or this Board." *Matter of G-N-C-*, 22 I&N Dec. 281, at 284 (BIA 1998).

Although I note that the Immigration Judges and this Board are the

---

[1] I find it troubling that this respondent is unrepresented and that we have not had the benefit of any substantial or meaningful legal briefing or argument on his behalf before rendering our decision in his case as a precedent.

quasi-judicial entities within the Department of Justice that ordinarily would exercise the authority conferred on the Attorney General by Congress to adjudicate removability, I also agree that the delegation of the Attorney General's authority to reinstate a prior order of removal has been restricted by regulation to the Service. *See* 8 C.F.R. §§ 3.1(b), 241.8(a) (1998). Consequently, as we have not been delegated such authority, and we are bound by the regulations promulgated by the Attorney General, we lack jurisdiction to review orders of the Service reinstating removal under section 241(a)(5) of the Act, 8 U.S.C. § 1231(a)(5) (Supp. II 1996), *See* 8 C.F.R. §§ 3.1(b), 241.8(a); *see also Matter of Ponce de Leon*, 21 I&N Dec. 154 (BIA 1996).

Nevertheless, I disagree with the reasoning and the ultimate conclusions reached by the majority for two principal reasons. First, I do not read section 241(a)(5) of the Act, which was enacted on September 30, 1996, by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 303(b)(3), 110 Stat. 3009-546, 3009-586 ("IIRIRA"), and became effective on April 1, 1997, as applying to the respondent, who was deported in 1991 and is alleged to have returned in 1995. Therefore, the Immigration Judge and the Board have jurisdiction to address the allegations and charges in the filed Notice to Appear and, respectively, to conduct the removal proceeding and resolve this appeal as we would any other removal proceeding initiated by the Service.

Second, notwithstanding section 241(a)(5) of the Act, it appears that in the proceedings presently subject to our jurisdiction, the respondent may be able to establish that he was inspected and  admitted at a port of entry, and that, even if he was not lawfully admitted, he may be eligible in such proceedings either for relief from removal based on his current circumstances, or for withholding of deportation based on changed circumstances in Nigeria since the time of his initial application before the Immigration Judge in 1991. Although I agree with the majority that the respondent's motion to reopen his 1991 proceedings to apply for relief from deportation must be denied as untimely, I recognize that the substantial changes made by the recent amendment of the Act only are beginning to be understood by laypersons and legal professionals alike, and I would not invoke form over content to reject the totality of the defenses and claims for relief made in the respondent's Notice of Appeal.

Thus, in the context of the case before us, I cannot conclude, as the majority has, that the respondent has not been prejudiced by the ruling of the Immigration Judge terminating the removal proceedings without notice to the respondent. Rather, I believe that the determination of whether the respondent has been prejudiced requires a factual inquiry, making remand the appropriate resolution of this appeal. These objections are discussed, in order, below.

## I. ESSENTIAL FACTS AND PROCEDURAL BACKGROUND

I view the specific factual and procedural background of this complicated case as critical to our disposition. Although I acknowledge that the "facts" set forth in the record before us are somewhat muddled, my reading—which I draw from the 1990 decision of the Immigration Judge, as well as from original documents in the record and which forms the predicate for my opinion—is as follows:

1. On January 9, 1986, the respondent originally was admitted to the United States as a nonimmigrant student, authorized to remain for as long as he maintained that status. Based on his marriage to a United States citizen, the respondent's status was adjusted to that of lawful permanent resident, subject to a condition, on May 18, 1987. According to the statute, his lawful permanent resident status would have terminated on May 18, 1989, as the respondent and his wife apparently did not apply to have the condition removed. *See* section 216 of the Act, 8 U.S.C. § 1186a (1988).

2. A deportation hearing, charging the respondent with deportability based on a 1988 conviction for mail fraud, a crime involving moral turpitude, was initiated in early 1990, and on September 26, 1990, an Immigration Judge found the respondent deportable on that charge.

3. During the hearing, the respondent sought to apply for adjustment of status (and a waiver of excludability under section 212(h) of the Act, 8 U.S.C. § 1182(h) (1988)), and for asylum and withholding of deportation as relief from deportation. The 1990 decision of the Immigration Judge indicates that the respondent claimed his wife had filed a visa petition, but that because the respondent already had once been granted lawful permanent resident status subject to a condition, the Immigration Judge ruled that "he is ineligible for adjustment of status."[2]

4. In addition, the Immigration Judge's decision reflects that the respondent applied for or sought to apply for asylum and withholding of deportation, as the respondent testified to his fear of persecution upon return to Nigeria because of his status as a potential deportee, and because of his membership in the Biafran tribe, which was disfavored and persecuted on account of their association with a revolution "which occurred some years ago."[3]

---

[2]On appeal, the Board corrected the erroneous conclusion of the Immigration Judge that the respondent was ineligible to adjust his status under section 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a) (1988), because he had been granted lawful permanent resident status subject to a condition, ruling that since that status had terminated, he would be eligible were there an approved visa petition. *See* section 245(d) of the Act, as implemented by 8 C.F.R. § 245.1(b)(12) (1991); *Matter of Stockwell*, 20 I&N Dec. 309, 311-12 (BIA 1991).

[3]The Immigration Judge found that the respondent was ineligible for asylum because his claim was not "based on any events which involved him" and consisted of "a broad allegation of conduct by the government towards large classes of persons whom he alleges are similarly situated to him."

5. The respondent appealed the decision to the Board, but argued only that the proceedings were unfair and that he was entitled to seek adjustment of status. The Board upheld the Immigration Judge's order, finding that the respondent was ineligible for adjustment of status because he did not submit any evidence that he was the beneficiary of an approved visa petition. On June 13, 1991, the Board also denied the respondent's subsequent motion to reopen, in which he claimed the Service refused or failed to adjudicate his spouse's visa petition, noting our lack of authority to adjudicate such petitions.

6. The respondent was deported on November 13, 1991, following the dismissal of his appeal to the United States Court of Appeals for the Fifth Circuit on October 29, 1991. In December 1995, the respondent reentered and filed a motion to reopen the 1991 proceedings with the Board on November 12, 1996, seeking to obtain consideration of his 1996 marriage to a United States citizen, with whom he has a child, and to establish eligibility for adjustment of status.

7. The respondent, who now is subject to a removal proceeding that commenced on May 8, 1997, in which he is charged with being present without having been admitted or paroled, argues that he was erroneously deported in 1991. In addition, however, he claims that he was admitted upon his return in 1995. His contention that he reentered using his original green card is corroborated to some extent by the Order to Show Cause originally issued to him on September 5, 1996, which alleges: "3. You entered the United States at or near New York City . . . [and] 4 . . . you entered knowing your resident alien card was no longer valid."

8. He asserts that he sought the permission of the Attorney General to reenter and that he presented his passport and green card upon arrival in the United States in 1995. He also argues that a 1997 criminal conviction based on a charge of reentry after deportation is on appeal, and he has submitted a letter from Special U.S. Attorney Jason Bowles to United States District Judge Howard C. Bratton, opining that the respondent's appeal was properly docketed and that jurisdiction lies in the United States Court of Appeals for the Tenth Circuit. The record includes a Service exhibit containing a conviction record noting the respondent's arrest by border patrol agents in Artesia, New Mexico.

9. In his appeal to the Board, challenging the termination of removal proceeding, the respondent states that he is seeking adjustment of status,[4] claiming that he is married to a United States citizen, with whom he has one child born in this country, and that he is certified by the United States Department of Transportation as a long haul truck driver.[5] He also indicates that he is seeking asylum and withholding of deportation.

---

[4]Although the respondent partially frames his appeal in terms of seeking an exception to summary removal under section 235 of the Act, 8 U.S.C. § 1225 (Supp. II 1996), and seeks action on a motion to reopen filed in November 1996 prior to the institution of the instant proceedings, it is clear that he is asking to be heard on the current removal charges and to seek relief from removal based on his present circumstances.

[5]As presently constituted, the record contains only a photocopy of a marriage certificate issued in Galveston, Texas, on February 19, 1996, and there is no prima facie evidence of eligibility for adjustment of status, such as a receipt or file-stamped copy of a Petition for Alien Relative (Form I-130) by the respondent's current wife, accompanied by other documents such as a divorce decree from his prior marriage, his child's birth certificate, his certification for long haul trucking employment, and other evidence of the bona fides of the respondent's marriage and his eligibility for adjustment of status (including eligibility for a section 212(h) waiver under the Act as now amended).

10. On May 16, 1997, while these proceedings were pending, the respondent was presented with a written notice issued by the Service pursuant to 8 C.F.R. § 241.8 stating that he is removable under section 241(a)(5) of the Act. The Service states that a record search revealed no application for permission to reenter, and that the Immigration Judge correctly terminated proceedings. The Service contends that we have no authority to address the respondent's claims, since it has a reinstated order, notwithstanding that such an order was obtained after jurisdiction was conferred on the Immigration Court.

The majority concludes we have no jurisdiction to review the challenges made by the respondent to the reinstated order, and comments that we neither render an opinion as to whether the Service can place an alien in proceedings when he is subject to a reinstated order, nor address the Service's authority to remove him pending our review. *See Matter of G-N-C-, supra*, at 287 n.3. For reasons discussed below, I question whether the respondent is subject to the reinstated order at all, and I note that, even assuming that he *would be* subject to such an order, an equally pertinent question is whether the Service can reinstate a prior order under section 241(a)(5) of the Act—as the Service did here on May 16, 1997—when jurisdiction already lies with the Immigration Court. Furthermore, I disagree that the challenges raised by the respondent are limited to matters covered in the reinstated order, as I find them to address the manner of his last entry to the United States and his present eligibility for relief.

## II. STATUTORY LANGUAGE AND EFFECTIVE DATE ISSUES RELATING TO SECTION 241(a)(5) OF THE ACT

As a quasi-judicial body, the Board has jurisdiction to determine the scope and extent of our jurisdiction under the regulations, which expressly grant the Board jurisdiction to review decisions made in removal proceedings. 8 C.F.R. § 3.1(b)(3); *see also Matter of Fuentes*, 21 I&N Dec. 893 (BIA 1997) (concluding that, as the respondent is a citizen, we do not have jurisdiction to find him deportable or to order him deported); *Matter of Singh*, 21 I&N Dec. 427 (BIA 1996) (stating that we have no jurisdiction over legalization applications); *Matter of Victorino*, 18 I&N Dec. 259 (BIA 1982) (holding that once proceedings are instituted, jurisdiction to change venue lies with the Immigration Judge and not the district director); *Matter of Ajeallo*, 15 I&N Dec. 85 (BIA 1974) (finding that the Immigration Judge erred in concluding he lacked jurisdiction to determine whether the respondent received any funds through the exchange visitor program); *Matter of Kwun*, 13 I&N Dec. 457 (BIA 1969, 1970) (addressing the Board's authority, under a former version of the statute and regulations, to review a district director's custody determination with respect to an alien who has surrendered for deportation).

293

The principle that a court has jurisdiction to determine its own jurisdiction in relation to the terms of the immigration statute is well established by related decisions of the United States Court of Appeals for the Fifth Circuit, the circuit in which the respondent's appeal arises. *See Okoro v. INS*, 125 F.3d 920 (5th Cir. 1997) (holding that to determine whether the petition was subject to the jurisdictional bar of section 306(d) of the IIRIRA, 110 Stat. at 3009-612, which precludes judicial review of any final order of deportation against an alien found deportable by reason of having committed certain criminal offenses, the court must examine whether the offenses underlying the deportation order are those described in the statute); *see also Anwar v. INS*, 116 F.3d 140 (5th Cir. 1997) (replacing *Anwar v. INS*, 107 F.3d 339 (5th Cir. 1997)); *Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir.), *cert. denied sub nom. Katsoulis v. INS*, 522 U.S. 1027 (1997).

The majority's conclusion that we have jurisdiction to review the decision of the Immigration Judge granting the Services's motion to terminate is based on the fact that the Notice to Appear was filed and proceedings were commenced before the Immigration Judge on May 8, 1997. *See* 8 C.F.R. §§ 3.1(b)(3), 3.14. Once a case is before the Board, as is the respondent's removal proceeding on appeal, the regulations mandate that "the Board shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary" to resolve the case. 8 C.F.R. § 3.1(d).

While the majority appears to assume that section 241(a)(5) of the Act applies to the respondent and requires us to grant the Service's motion to summarily dismiss the appeal, the majority does not explain the basis for this conclusion, and has not addressed either the broader jurisdictional questions of the applicability of section 241(a)(5) to the respondent, or the effect of section 241(a)(5) of the Act on our authority to act in this particular case. Nevertheless, to reach a reasoned conclusion in exercising jurisdiction over the respondent's case, we must determine whether section 241(a)(5) applies to the respondent's December 1995 reentry based on a prior order of deportation that was appealed and became administratively final in 1991.

## A. Statutory and Regulatory Provisions

Section 241(a)(5) was added by section 305(a) of the IIRIRA, 110 Stat. at 3009-599, and presently provides:

> If the Attorney General finds that an alien has reentered illegally *after having been* removed *or departed voluntarily, under a prior* order of removal, *the prior* order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed *under the prior order* at any time after reentry.

294

(Emphasis added).

As added by section 305 of Subtitle A of Title III of the IIRIRA, section 241(a)(5) of the Act became effective on April 1, 1997. *See* IIRIRA § 309(a), 110 Stat. at 3009-625. Section 309 of the IIRIRA, which also took effect on April 1, 1997, is not codified in the Act, but provides effective dates and transitional rules that govern both the amendments made by subtitle A of Title III, generally, and the application of the amendments to aliens in exclusion or deportation proceedings on the April 1, 1997, as well as other transitional matters.

In implementing this section of the statute, the Attorney General promulgated 8 C.F.R. § 241.8. The regulation provides that, "[a]n alien who illegally reenters the United States after having been removed, or having departed voluntarily, while under an order of exclusion, deportation or removal shall be removed from the United States by reinstating the prior order." 8 C.F.R. § 241.8(a). The regulation states that there will be no hearing before an Immigration Judge, but that whether the alien was subject to a prior order, whether the alien is the alien who was previously removed, and whether the alien unlawfully reentered the United States will be determined by the Service. The regulation provides an exception to the statute's preclusion of applications for relief where the alien expresses a fear of returning to the designated country under a reinstated order and instructs that the alien "shall be immediately referred to an asylum officer to determine whether the alien's removal . . . must be withheld under section 241(b)(3) of the Act." 8 C.F.R. § 241.8(d).

## B. Statutory Interpretation and Related Considerations

The plain language of section 241(a)(5) of the Act describes a violation of law that entails the act of reentering the United States illegally after a prior expulsion. The act of reentering the United States illegally is the essential conduct that triggers the operation of section 241(a)(5) of the Act. The timing and circumstances of the illegal reentry also are critical to an interpretation of the section, which refers specifically to an alien's previously "having been removed," or to an "order of removal," three times in a single sentence constituting the subsection.

Even assuming that the respondent reentered unlawfully based on his having used his former green card and failing to have obtained the Attorney General's consent to reenter, he did not reenter the United States unlawfully after April 1, 1997, and he did not reenter subject to an order of removal. The only acts that occurred after April 1, 1997, in the respondent's case were the issuance of the Notice to Appear and the Service's subsequent action to obtain a reinstated order.

### 1. Construction of Section 241(a)(5) in the
### Context of theAct as a Whole

"Removal" is a term of art that was coined in the enactment of the IIRI-RA. If the statutory language used constitutes a plain expression of congressional intent as to the precise question addressed in the statute, it must be given effect. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984). In construing the Act as amended by Subtitle A of Title III of the IIRIRA, the singular use of the term "removal" in section 241(a)(5) of the Act, as compared to the use of compound terms to refer to expulsion in other sections of the Act, warrants giving the term its facial meaning. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987) (addressing the proper construction of Congress' use of different language in different sections of the same Act); *see also Matter of Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997).

The term "removal" and the term "deportation" are not synonymous. For example, where Congress intended the scope of a statutory section to include both orders of deportation and orders of removal, both are mentioned. In section 101(g) of the Act, 8 U.S.C. § 1101(g) (Supp. II 1996), a definitional section cited by the majority at note 3 of its opinion, Congress specifically added the term "removed" to the existing subsection, which originally contained only the term "deported." *See* IIRIRA § 308(e)(3), 110 Stat. at 3009-620 ("Revision of Terminology Relating to Deportation"). In contrast to section 241(a)(5) of the Act, this subsection of the statute now not only includes both terms, but also establishes expressly that one who departed following either type of order, "whether before or after enactment of the Act," shall be considered to have been either deported or removed in pursuance of law.

Similarly, section 306(c) of the IIRIRA, 110 Stat. at 3009-612, relating to judicial review of removal orders, provides that section 242 of the Act, 8 U.S.C. § 1252 (Supp. II 1996), "shall apply to all final orders of deportation or removal and motions to reopen filed on or after the date of enactment of this Act." *See also* H.R. Conf. Rep. No. 104-828, at 221 ("Joint Explanatory Statement"). These amendments specify expressly that they are to apply to orders of deportation *and* removal, and are limited to filings made after the enactment date.

In another example of this distinction found in a substantive context, section 212(d)(12)(A) of the Act provides that, for humanitarian purposes or to assure family unity, the application of section 212(a)(6)(F)(i) may be waived, "in the case of an alien lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under *an order of deportation or removal* and who is otherwise admissible to the United States as a returning resident under section 211(b)." (Emphasis added). Had Congress intended the phrase "order of removal" to be read universally to encompass "order

of deportation," wherever it was found in the Act, the reference to both types of orders in these sections of the Act would be redundant.

Yet another example is found in section 276(a)(1) of the Act, 8 U.S.C. § 1326 (Supp. II 1996) (involving the criminal penalties for reentry), which was amended by section 308(d)(4)(J) of the IIRIRA, 110 Stat. at 3009-618, to include departures under executed or outstanding exclusion, deportation, or removal orders as a basis for liability. Had Congress considered the phrase "order of removal" to encompass each of these forms of expulsion, the amendment would have taken a different form.

It is undisputed that the respondent was *not* subject to an *order of removal* in 1991, but that he was expelled pursuant to an order of deportation that was administratively final.[6] Unless his deportation and reentry are included by virtue of some other provision in the statute, he is not subject to section 241(a)(5) of the Act.

## 2. Impact of Section 309 of the IIRIRA:  Effective Date and Transition Rules

The IIRIRA provides effective dates and transition rules that lend further support to my contention that section 241(a)(5) of the Act is inapplicable to the respondent. *See* IIRIRA § 309, 110 Stat. at 3009-625. As stated, section 309(a) makes clear that the provisions of  subtitle A, Title III, of which section 241(a)(5) of the Act is part, apply beginning April 1, 1997. Section 241(a)(5) of the Act contains no independent effective date and no express language making its terms retroactive or otherwise extending its applicability to conduct or circumstances prior to April 1, 1997.

Section 309(c) specifically addresses the means by which proceedings that were initiated prior to the enactment and effective dates of the IIRIRA shall be handled in light of the amendments to the Act. With certain potential exceptions not applicable here, section 309(c)(1)(A) provides that in the case of an alien who "is in" exclusion or deportation proceedings before the Title III effective date, "the amendments made by this subtitle shall not apply."  These rules effectively ease the transition from the former to the new provisions, by clarifying which provisions apply to pending or "pipeline" cases. It has been argued that section 309(c)(1) is inapplicable to persons such as the respondent, because the prior proceedings in his case have been terminated by his deportation. Although I do not necessarily disagree, such an argument begs the question.

---

[6]Although there are times that a prior unlawful deportation may be challenged in a current proceeding, *see, e.g.,  Matter of Malone*, 11 I&N Dec. 730 (BIA 1966), I concur with the majority that the record supports the conclusion that the respondent was not deported until after his appeal had been dismissed by the Fifth Circuit on October 29, 1991.

Significantly, if the phrase "is in . . . proceedings" is read to encompass only those "pipeline" cases that were pending on April 1, 1997, but not to include those that had been completed before that date, our consideration of whether the respondent is subject to removal based on the reinstatement of his 1991 deportation order is not governed by the transition rules. Thus, to determine whether section 241(a)(5) of the Act applies to the respondent, we would simply construe which reentries were to be covered, which would necessarily only be those after April 1, 1997, since, by definition, there can be no order of removal issued prior to April 1, 1997.

It is reasonable that as the provisions of subtitle A, Title III take effect on April 1, 1997, the "transition" rules, in their totality, should apply only to those cases which were pending and not concluded prior to April 1, 1997. As section 309(d)(2) of the IIRIRA, 110 Stat. at 3009-627, entitled "Transitional References," states that "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation," this reading would encompass exclusion and deportation orders issued after April 1, 1997, resulting from ongoing exclusion and deportation proceedings. Applying section 309(d)(2) to these orders would support reading the phrase "order of removal" in section 241(a)(5) of the Act as applicable to post-April 1, 1997, reentries following the execution of exclusion and deportation orders that were issued after April 1, 1997. As the instant case does not fall in this category, however, section 309(d)(2)of the IIRIRA—and consequently, section 241(a)(5) of the Act—are inapplicable to the respondent.

It is true that the articulation provided by the Attorney General in 8 C.F.R. § 241.8, extends the terms of the statute, using the term "removal" to encompass not only an alien who was "removed," but who departed voluntarily while under an order of "exclusion, deportation or removal." *Id.* This appears to extend the scope of section 241(a)(5) of the Act, as far as the Attorney General is concerned, to departures that were not enforced, but voluntary, in conformity with the concept of "self-deportation." *See* 8 C.F.R. § 241.7 (1998). In addition, it broadens the types of orders of expulsion that trigger reinstatement of removal to include those covered by section 309(d)(2),

Nevertheless, this regulation need not be read to exceed the terms of section 309(d)(2), or its application to transition cases. As section 309(d)(2) arguably extends the term "removal" to encompass orders of exclusion and deportation issued after April 1, 1997, in proceedings subject to the transition rules, both section 309(d)(2) and 8 C.F.R. § 241.8 can be given effect within the parameters of section 309(a) of the IIRIRA. The regulation should not be read to mean that the respondent's pre-April 1997 order of deportation must be deemed an order of removal under section 241(a)(5) of the Act.

It has been argued that section 309(d)(2) applies to all cases, even those

that do not come under the transition rules.[7] Given Congress' specific usage of both the phrases "order of removal" and "order of deportation" in other substantive sections of the action, and given the placement of section 309(d)(2) within the effective dates and transition rules provisions of the IIRIRA, however, I question whether the respondent's "order of deportation" is subject to being equated with "orders of removal" as construed under section 309(d)(2).

Nevertheless, even were section 309(d)(2) to be read broadly and applied universally to all prior orders of exclusion and deportation, the fact that the respondent's order of deportation would be considered an "order of removal," would not be dispositive of the applicability of either section 241(a)(5) of the Act or, correspondingly, of 8 C.F.R. § 241.8, to his case. At most, section 241(a)(5) encompasses unlawful reentries after April 1, 1997, following *either* exclusion or deportation orders issued after April 1, 1997, *or*, post-April 1, 1997, reentries subsequent to prior orders. Reading the statute and the Attorney General's regulation together in this manner expands the scope of applicability a bit more broadly, extending it to exclusion and deportation orders entered before April 1, 1997. Nevertheless, even read this way, the statutory section does not extend to prior orders of exclusion and deportation that resulted in reentries *before* April 1, 1997, and as such, does not encompass the respondent.

### 3. Presumption Against Retroactivity

There is no basis on which to read section 241(a)(5) of the Act, independently or taken together with section 309(d)(2) of the IIRIRA, to encompass both exclusion and deportation orders issued prior to its effective date *and* reentries after such orders occurring before its April 1, 1997, effective date. The specific language of section 241(a)(5) of the Act refers to the act of illegally reentering the United States following an order of removal. Unlike section 309(d)(2), equating orders of removal with prior orders of exclusion and deportation, the IIRIRA contains no provision

---

[7]Although one court has concluded that section 309(d)(2) applies to deportation orders universally, that does not resolve the question of whether a reentry prior to April 1, 1997, is covered by section 241(a)(5) of the Act. *Cf. Mendez-Tapia v. Sonchik*, 998 F. Supp. 1105 (D. Az. 1998), Moreover, I note that in *Ayala v. Reno*, 995 F. Supp. 717 (W.D. Tx. 1998), dismissing a petition for a writ of habeas corpus to prevent the Attorney General from removing the petitioner pursuant to section 241(a)(5) of the Act, the district court for the Western District of Texas relied on *Auguste v. Attorney General*, 118 F.3d 723, 726 (11th Cir. 1997) (which first was reversed on rehearing and now is vacated, 1998 WL 556263 (11th Cir. Sept. 2, 1998)), to find that section 242(g) of the Act deprives courts of jurisdiction over claims which arise "'from the decision or action by the Attorney General to . . . execute [a] removal order [ ].'" *Ayala v. Reno, supra*, at 718 (quoting section 242(g) of the Act).

deeming reentries prior to the effective date with those made after April 1, 1997.[8] Similarly, the regulation makes no such assertion, and neither the statute nor the regulation needs to be construed to encompass pre-April 1, 1997, reentries to give effect to its terms.

The retroactive application of a statute is not to be presumed, and only will be implemented based on an express statement by Congress of its intention to accomplish such an application. *Landgraf v. USI Film Products*, 511 U.S. 244 (1994); *see also Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997); *Lynce v. Mathis*, 519 U.S. 433 (1997); *Goncalves v. Reno*, 144 F.3d 110, (1st Cir. 1998) *cert. denied* 119 S.Ct. 1140 (1999). A retroactive application of a statute is one that takes away or impairs vested rights, creates a new obligation, or attaches a new disability in relation to past transactions. *Landgraf v. USI Film Products, supra*, at 269; *Hughes Aircraft Co. v. United States ex rel. Schumer, supra*, at 1876; *Goncalves v. Reno, supra*, at 130.

Although reinstatement of prior deportation orders was provided previously in the statute before its amendment by the IIRIRA, in essence, reinstatement in its original form constituted a ground of deportability which had to be proven in a hearing before an Immigration Judge. *Matter of Malone*, 11 I&N Dec. 730, 731 (BIA 1966) (addressing proceedings under section 242(f) of the Act, 8 U.S.C. § 1252(f) (1964) to deport respondent on the basis of a 1953 order of deportation, following her reentry without the Attorney General's consent). Even more importantly, a respondent charged with deportability under former section 242(f) of the Act was permitted to apply for relief from deportation.

The respondent was ordered deported and entered the United States in December 1995, long before the enactment of section 241(a)(5) of the Act. At the time he was deported and at the time of his reentry after that deportation, he was entitled to a deportation hearing and would have been able to seek adjustment of status, and asylum and withholding of deportation, in proceedings before an Immigration Judge. The current section of the statute absolutely precludes a hearing before an Immigration Judge with regard to the prior order, and forecloses any applications for relief for which the respondent might be eligible. *See* Joint Explanatory Statement, *supra*, at 222; *see also* 8 C.F.R. § 241.8; 62 Fed. Reg. 10,326 (1997) (Supplementary Information),

The application of this provision—which in the respondent's case both impairs his vested right to apply for relief from deportation and imposes the

---

[8]By way of comparison, former section 242(f) of the Act, 8 U.S.C. § 1252(f) (1994), governing unlawful reentries qualified the violation with the express statement that it covered unlawful entry following deportation "whether before or after the date of enactment of this Act."

new disability of removal based on his prior deportation without a hearing or review—to an order of deportation and a reentry prior to April 1, 1997, is provided nowhere in the statutory language that pertains to section 241(a)(5) of the Act, and is impermissibly retroactive. *Cf. Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997) (interpreting the new restrictions on eligibility for discretionary section 212(c) waivers under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA") to present no retroactivity concerns by comparing such discretionary waivers to prospective injunctive relief, a procedural mechanism that, under *Landgraf*, would be applicable immediately); *but see Goncalves v. Reno*, *supra*, at 129 (critiquing the opinion of the Attorney General in *Soriano* as misinterpreting *Landgraf* and "effectively [applying] a presumption in favor of retroactive application to any restriction of relief that could be described as 'discretionary,'" a proposition that was rejected by the Supreme Court in *Landgraf* itself).[9]

Nor does section 309(d)(2), which only provides that orders of deportation issued after April 1, 1997, are considered orders of removal, call for such an application expressly or require it by its terms. At best the provision is ambiguous and could be read to apply to unlawful reentries only after orders of exclusion, deportation, or removal actually issued after April 1, 1997, or to any reentry after April 1, 1997. *See Lindh v. Murphy*, 117 S. Ct. 2059 (1997); *Goncalves v. Reno, supra*, at 127-28 (finding that little deference is owed the agency in the case of ambiguities related to effective dates and that an express congressional command is required to overcome the presumption against the retroactive application of statues). Moreover, its terms are given effect without resorting to an unwarranted retroactive application, as I have described above. Consequently, there is no basis to apply section 241(a)(5) of the Act retroactively.[10]

## 4. Notice and Applicability Considerations

There are additional bases that support a reading of  April 1, 1997, as

---

[9]The court found the Attorney General's contention in support of her interpretation—that Congress expressly included a retroactivity provision to new restrictions on relief for alien terrorists in section 413 of the AEDPA, 110 Stat. at 1269, only because they were not discretionary—to be erroneous, as the provisions are, with one exception, discretionary. *Goncalves v. Reno, supra*, at 130.

[10]The proposition that even if section 241(a)(5) of the Act was found to be retroactive as applied to the petitioner's *removal*, the prohibition against discretionary relief in section 241(a)(5) would apply—because such "repeal of [the] discretionary power" has no retroactive effect—cannot be squared either with the scope of the restriction in section 241(a)(5)—which, by its terms, applies to *reinstated orders of removal*—or the presumption against retroactivity. *Cf. Mendez-Tapia v. Sonchik, supra*, note 7; *see also Goncalves v. Reno, supra.*

the first date after which an order of exclusion, deportation, or removal, or a reentry following expulsion based on a prior exclusion or deportation order, can support reinstatement under section 241(a)(5) of the Act. A most significant one is that the statute now provides notice to persons who are subject to removal (or exclusion or deportation) or who are contemplating unlawful reentry after April 1, 1997. This section of the statute and 8 C.F.R. § 241.8 constitute a warning to the individual being expelled from the United States that he or she is not only subject to criminal penalties should he or she reenter after expulsion, but that if found in the United States, he or she will be denied any hearing before an Immigration Judge and will be deemed ineligible for any form of relief from expulsion and removal that otherwise might have been available to him or her.

Another consideration is the continued provision in the statute for adjustment of status under section 245(i) of the Act, 8 U.S.C. § 1255(i)— available to an alien on whose behalf a visa petition was filed prior to January 14, 1998. Section 245(i) expressly allows an alien who is physically present in the United States to apply for adjustment of status, even if he is unlawfully present. The provision does not bar an individual whose entry followed a prior deportation. *See* 8 C.F.R. § 212.2(e) (1991). Although section 245(i) was amended *after* the enactment of section 241(a)(5) of the Act, Congress did not modify it—nor was 8 C.F.R. § 212.2(e) modified—to preclude adjustment in cases of reentry after deportation. *See Goncalves v. INS, supra; see also Lorillard v. Pons*, 434 U.S. 575 (1978); *Merrill, Lynch, Pierce, Fenner, Smith, Inc. v. Ware*, 414 U.S. 117 (1973) (stating that the proper approach when confronted with two differing statutory provisions is to reconcile them).

Under either construction discussed in section B.2. above, section 241(a)(5) of the Act has an immediate prospective effect. It encompasses reentries following exclusion or deportation orders issued *after April 1, 1997*, as the result of pipeline cases that were pending on or initiated after the enactment of the IIRIRA on September 30, 1996, and could be read to encompass reentries made after April 1, 1997, based on any such orders that were issued *before April 1, 1997*. In other words, on April 1, 1997, an alien unlawfully reentering the United States who was deported that morning, whether he was the subject of an order of exclusion, deportation, or removal, would be subject to removal based on reinstatement of the order.

This reading differs substantially from the Board's reading of the statutory section in the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, which included a new bar on discretionary waiver relief under former section 212(c) of the Act, 8 U.S.C. § 1182 (Supp. V 1993), in cases in which a respondent had served 5 years for an aggravated felony conviction. There, the requirement that a 5-year sentence have been served led the Board to find the new section applicable to all qualifying aggravated felony convictions, including those obtained prior to the enactment of the statute. *Matter*

*of A-A-*, 20 I&N Dec. 492 (BIA 1992) (explaining that to require a criminal alien to have served 5 years for an aggravated felony after the enactment date would require placing the law on hold for 5 years from the effective date designated by Congress). Clearly, that is not the case before us and no such pre-enactment application is required, as the reading of section 241(a)(5) that I propose does not limit its application at all as to either the type of proceedings—removal, exclusion, or deportation—that trigger section 241(a)(5), but only limits the application of section 241(a)(5) either to orders issued or, at a minimum, to reentries made after the April 1, 1997, effective date.

Thus, even assuming that section 309(d)(2) of the IIRIRA is a permanent rather than merely a transitional provision applicable to "pipeline" cases, both section 241(a)(5) of the Act and 8 C.F.R. § 241.8 can be applied and given effect prospectively, by including either orders of exclusion, deportation, and removal issued on or after April 1, 1997—or at most, actual reentries after that date—within the ambit of the subsection. Such a reading not only is consistent with the language of 8 C.F.R. § 241.8, but ensures that notice is given to all potentially affected individuals—by means of both the statute, and the implementing regulation—of the consequences of reentry. *See Goncalves v. INS, supra*; *see also* Morawetz, *Rethinking Retroactive Deportation Laws and the Due Process Clause*, 73 N.Y.U. L. Rev. 97 (1998).

## III. IMPROPER TERMINATION AND PREJUDICE TO THE RESPONDENT

The applicability of section 241(a)(5) of the Act to the respondent's circumstances affects not only our jurisdiction, but our assessment of the prejudice the respondent may have suffered by having been deprived of a full removal hearing before the Immigration Judge. If section 241(a)(5) does not apply to the respondent, then the respondent must be provided an opportunity to establish that he is not inadmissible as charged. *See* section 240(c)(2) of the Act, 8 U.S.C. § 1229a(c)(2) (Supp. II 1996). He also must be provided an opportunity to apply for relief from removal and is entitled to a full hearing on such claims in the first instance before the Immigration Judge.

Moreover, the proper construction of the scope and applicability of section 241(a)(5) of the Act—as well as a proper understanding of the jurisdiction vested with the court—clearly has a bearing on whether the Immigration Judge's determination to terminate the proceedings resulted in prejudice to the respondent. Even assuming the *potential* applicability of section 241(a)(5) of the Act to the respondent, the fact that proceedings were commenced before the Immigration Judge, and that jurisdiction now

exists before the Immigration Judge and the Board under the regulations, must have some force and consequence.

The majority dismissed the respondent's appeal because it found the respondent did not explain how he was prejudiced and was "therefore not satisfied that any useful purpose would be served by remanding the case." *Matter of G-N-C-, supra*, at 286. This statement strikes me as a concession by the majority that were the respondent to have better explained how he was prejudiced or more cogently raised claims for relief, the majority believes that the Immigration Judge would have jurisdiction to conduct a hearing on remand in a case such as this one. Indeed, in finding that the respondent has not established that he suffered prejudice as the result of the Immigration Judge's error in terminating the removal hearing, the majority effectively concedes this point.

The majority does not conclude, as a jurisdictional matter, that there never could be a showing of prejudice, or that there never would be any basis for a remand because a respondent could be or was the subject of a reinstated order. To so hold would conflict directly with the majority's conclusion that "a Service motion to terminate proceedings must be adjudicated on the record and pursuant to the regulations, as would any other motion presented to the Immigration Judge or to this Board." *Matter of G-N-C-, supra*, at 284. Nevertheless, while insisting that we have more than "rubber-stamp" jurisdiction over the motion to terminate on the one hand, the majority, on the other hand, has effectively and, I believe, unnecessarily surrendered our jurisdiction.[11]

I believe that the majority errs in finding no prejudice to have been established, or in the alternative, in failing to remand the removal proceeding for a determination of prejudice. The Fifth Circuit has held that denial of the opportunity to be heard is fundamental to the fairness of a hearing and is per se prejudicial. *Chike v. INS*, 948 F.2d 961, 962 (5th Cir. 1991) (holding that "[b]y showing that he was denied the opportunity to be heard before the Board of Immigration Appeal [when he did not receive notice of a briefing schedule and failed to file his brief], Petitioner has shown substantial prejudice" and finding that "denial of the opportunity to be heard is, in and of itself, substantial prejudice"); *see also Sewak v. INS*, 900 F.2d 667, 670 n.7 (3d Cir. 1990) (rejecting harmless error doctrine where respondent was denied his fundamental statutory right to receive notice of hearing).

Although the Board holds that not every violation of a regulation or a

---

[11]Specifically, after construing the respondent's November 12, 1996, motion as an out-of-time motion, the majority simply ignored the possibility that the respondent might be eligible for a section 212(h) waiver and adjustment of status, in lieu of removal on the instant charges (which have never been adjudicated), based on his present marriage and the extreme hardship that might be faced by his wife and child, were he to be removed.

fundamental right—such as being given notice of pleadings submitted to the Immigration Court and an opportunity to be heard—is prejudicial, and even assuming it is appropriate to find no prejudice where the opportunity to be heard was denied, it is difficult to determine prejudice on the face of the appellate record.[12]   8 C.F.R. § 3.2(g)(1) (1998); *see also Matter of Gibson*, 16 I&N Dec. 58 (BIA 1976). In the event of a violation of this nature, the case should be remanded, if necessary, to determine prejudice. *See Matter of Hernandez*, 21 I&N Dec. 224 (BIA 1996); *see also Matter of Garcia-Flores*, 17 I&N Dec. 325 (BIA 1980).

The appeal before us does not involve a situation in which a hearing actually has been held and we are reviewing errors raised on appeal for prejudice. *See Matter of Santos*, 19 I&N Dec. 105, 110 (BIA 1984) (involving a situation in which "the operative facts are undisputed, deportability is clear," and the respondent did not establish prejudice on appeal); *see also Matter of Sibrun*, 18 I&N Dec. 354 (BIA 1983) (regarding the need to show actual prejudice materially affecting the outcome that resulted from a denial of a continuance requested during a hearing to obtain additional evidence).

Similarly, it does not involve a situation in which the respondent *had* an opportunity to be heard and could not demonstrate how the error alleged adversely affected the outcome. *Anwar v. INS, supra*, at 144 (requiring a prima facie showing of eligibility for asylum and withholding of deportation to support the petitioner's claim that the Board's refusal to extend his briefing period caused him substantial prejudice). It involves a situation in which the respondent had *no* opportunity to be heard on his defenses and claims. *Cf. Molina v. Sewell*, 983 F.2d 676 (5th Cir. 1993) (finding the petitioner was substantially prejudiced when he was prevented from presenting evidence to demonstrate that his departure was not meaningful). Consequently, the standard imposed by the majority is inappropriate.

At most, to establish prejudice or the propriety of a remand to establish prejudice resulting from being denied an opportunity to defend against the charge of removability and to present such applications that might afford him relief from removal, the respondent might be required to demonstrate at least some defense or some basis for some form of relief that would change the outcome of the hearing. *Patel v. INS*, 803 F.2d 804 (5th Cir. 1986) (declining to find a prejudicial denial of due process because the petitioner failed to challenge the finding of deportability or to allege eligibility for discretionary relief). This he has done.

However, the respondent need not establish that his position  would have prevailed or that he would be granted relief. *United States v. Castro*,

---

[12]In light of *Chike v. INS, supra*, we normally would not impose our harmless error standard in a case involving denial of an opportunity to be heard, but would acquiesce to the circuit court's rule. *Matter of Anselmo*, 20 I&N Dec. 25, 31 (BIA 1989).

26 F.3d 557, 563 (5th Cir. 1994) (holding that where neither the petitioner, nor his attorney, nor the court ever considered a judicial recommendation against deportation, the petitioner need only show that had it been requested, and that "there is a reasonably [sic] probability that the judge would have granted such relief"); *see also Shahendeh-Pey v. INS*, 831 F.2d 1384 (7th Cir. 1987) (finding harmless error doctrine does not require proof that a claim would have succeeded on the merits so long as the violation had the potential for affecting the outcome of the hearing).

I believe that the respondent has been substantially prejudiced by being denied an opportunity to address the Service's motion. At a minimum, as the basis for the Service's motion is that the respondent is subject to the terms of section 241(a)(5) of the Act, the respondent is entitled to test the Service's assertion with regard both to the applicability of section 241(a)(5) to him, based on its April 1, 1997, effective date and to its terms, which require the Attorney General to find that "an alien has reentered the United States illegally."

The respondent claims to have sought permission to reenter the United States after deportation and to have been admitted in New York upon his return. The record reflects that the Service originally alleged that the respondent had misused his former green card to enter in December 1995, and that the respondent was located in New Mexico almost a year following his December 1995 entry. It also reflects that the respondent is married and that the marriage took place in February 1996, prior to the institution of removal proceedings, and it contains his assertions that he has a child by that marriage. *See Matter of Garcia*, 16 I&N Dec. 623 (BIA 1978) (stating that an Immigration Judge may grant a continuance to permit the Service to adjudicate an I-130 petition); *see also Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992) (stating that the rule in *Garcia* is limited to marriages entered into prior to the commencement of proceedings). The respondent indicates repeatedly that he wishes to apply for adjustment of status. Although such an application requires the approval of an immigrant visa petition, and in the respondent's case, an application for a waiver under section 212(h) of the Act, the respondent was not advised of his apparent eligibility to seek such relief and was foreclosed from any opportunity to submit such applications as a result of the Immigration Judge's erroneous termination of his case. *See* 8 C.F.R. § 240.11 (1998); *see also supra*, note 6.

If the respondent was inspected and admitted in December 1995, and such admission was lawful because he had received the Attorney General's consent that he apply for reentry, he would not be subject to section 241(a)(5) of the Act under any interpretation of its effective date. Although, it is unlikely that such is the case, as permission to reapply for reentry requires the applicant to establish, in addition, a lawful basis for reentering the United States, he may be able to establish eligibility to apply for adjustment of status based on his marriage to a United States citizen. In estab-

lishing eligibility for adjustment, the respondent would be required to demonstrate both that he has an approved or pending I-130 petition submitted by his present wife, and that he warrants being granted a waiver under section 212(h) of the Act, because his wife and child would suffer extreme hardship if he were removed and the balance of equities tips in his favor. Therefore, if he was inspected and admitted based on the presentation of his former green card, but the admission was not lawful because he had not yet received permission from the Attorney General to apply for reentry, the regulations provide that he may seek such permission, nunc pro tunc, in connection with an application for adjustment of status made proceedings before the Immigration Judge. *See* 8 C.F.R. § 212.2(e) (1998).

The explicit authority of an Immigration Judge to consider requests for permission to apply for reentry, nunc pro tunc, in order to achieve an appropriate and necessary disposition of the case, is longstanding and was not disturbed by the amendments to the statute. *See Matter of Vrettakos*, 14 I&N Dec. 593, 599 (BIA 1973, 1974); *see also Matter of Ducret*, 15 I&N Dec. 620 (BIA 1976); *Matter of Tin*, 14 I&N Dec. 371 (R.C. 1973). From its inception, the Board has embraced the equitable concept of granting relief nunc pro tunc as appropriate and within the Attorney General's authority to extend in cases involving exclusion and deportation. In *Matter of L-*, 1 I&N Dec. 1, 5 (BIA, A.G. 1940), the first case decided by the Board under the delegated authority of the Attorney General, the Attorney General found that it would be capricious to conclude that "the technical form of the proceedings" would determine the result, and instructed that consideration for relief in deportation proceedings should relate back to the time at which the respondent was readmitted.[13]

Thus, while the respondent is within our jurisdiction, a remand ultimately could affect his status in such a way that his entry, no matter what its earlier character, is considered lawful, nunc pro tunc. Such a determination would take him outside of section 241(a)(5) of the Act under any reading of the provision, because his reentry would not be considered illegal.

## IV. CONCLUSION

The plain language of the statute and the presumption against retroac-

---

[13]At a minimum, the respondent is entitled to be heard with respect to any claim of withholding of deportation that he may wish to assert at this time. *Cf.* 8 C.F.R. § 241.8 (1998), In addition, although I am bound to follow the regulations issued by the Attorney General if section 241(a)(5) of the Act applies to the respondent, I note that there is no justification in the regulation—or in the statute—either for precluding an individual who reenters illegally from applying for asylum, or for requiring that withholding of deportation be determined exclusively by the Service, rather than by an Immigration Judge who ordinarily determines such claims. *See Marincas v. Lewis*, 92 F.3d 195 (3d Cir. 1996).

tivity support the conclusion that section 241(a)(5) does not apply to the respondent's reentry in December 1995. Even if the respondent were not exempt from the operation of section 241(a)(5) of the Act, however, it is agreed that the respondent was charged in removal proceedings and that jurisdiction lodged with the Immigration Judge. The conclusion reached by the majority with regard to the dismissal of the respondent's appeal is not only in contradiction to our conclusion that jurisdiction has vested, but invokes the terms of section 241(a)(5) of the Act far too broadly and misconstrues the prejudice to the respondent flowing from the Immigration Judge's termination of the removal proceedings.

As the majority acknowledges, the respondent had no opportunity to present his case opposing termination to the Immigration Judge. Nor did he have the benefit of a hearing in which the charge of removability and potential eligibility for relief was adjudicated as the statute requires. Section 241(a)(5) of the Act and 8 C.F.R. § 241.8, if applicable to the respondent at all, preclude only our revisiting the prior basis for deportability, and do not preclude our exercising jurisdiction over the independent charge of removability pending before us. In that context, it is within the authority of the Immigration Judge and the Board, if warranted by the evidence, to grant the respondent permission to reenter, nunc pro tunc, in conjunction with considering the respondent's eligibility for relief from removal. The record should be remanded to allow him the opportunity to be heard on these matters in removal proceedings before the Immigration Judge.