**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1860
_____

JOSE LUIS BEDOLLA AVILA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Department of Homeland Security
Agency No: A205-134-790
_____

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
on March 3, 2016

Before: McKEE, Chief Judge, SMITH and
HARDIMAN, Circuit Judges

Sandra L. Greene
Greene Fitzgerald Advocates and Consultants
2575 Eastern Boulevard

Suite 208
York, PA  17402
          Counsel for Petitioner

Julia J. Tyler
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
          Counsel for Respondent

(Opinion filed:  June 23, 2016)

_____

OPINION

_____

SMITH, Circuit Judge

Petitioner Jose Luis Bedolla Avila ("Bedolla"), a native and citizen of Mexico, petitions for review of a Final Administrative Removal Order ("FARO") issued on March 9, 2015, by an Assistant Field Office Director with U.S. Immigration and Customs Enforcement ("ICE"), United States Department of Homeland Security ("DHS"), in Allenwood, Pennsylvania.  For the reasons that follow, we will deny the petition for review.

2

I.

Bedolla illegally entered the United States in 1991, although he traveled to Mexico and re-entered the United States at least once since then. In February 2012, he was arrested in Chester County, Pennsylvania, on a bench warrant for failure to appear at trial on a charge of driving under the influence of alcohol. He was referred to an Immigration Enforcement Agent and, on February 22, 2012, was placed in removal proceedings pursuant to Section 240 of the Immigration and Nationality Act ("INA"), 28 U.S.C. § 1229a, on the grounds that he is an alien present in the United States without being admitted or paroled under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). An Immigration Enforcement Agent personally served him with a Notice to Appear on February 29, 2012.

Bedolla obtained counsel. He conceded removability and requested cancellation of removal and adjustment of status. In February 2014, DHS filed a motion to pretermit the application for adjustment of status on the grounds that Bedolla had departed the United States and reentered without inspection after accruing more than one year of unlawful presence in the United States. *See* INA § 212(a)(9)(C)(i)(I), 8 U.S.C. § 1182(a)(9)(C)(i)(I). Bedolla did not respond to the motion. The Immigration Judge pretermitted the application for adjustment of status on April 18, 2014 and set a hearing on the issue of cancellation of removal for August 26, 2014.

3

On May 1, 2014, before the scheduled hearing date, Bedolla was arrested on drug charges. His attorney obtained a continuance of his removal hearing due to his arrest and incarceration. On February 18, 2015, Bedolla pleaded guilty to a charge of Possession with Intent to Manufacture or Deliver Cocaine in violation of 35 P.S. § 780-113(a)(30). The same day, the Court of Common Pleas of Chester County, Pennsylvania, sentenced Bedolla to a term of imprisonment of 282 days to 23 months pursuant to the plea agreement.

The day after Bedolla entered the guilty plea, February 19, 2015, DHS issued a Notice of Intent to Issue a Final Administrative Removal Order ("NOI"), placing Bedolla in expedited administrative removal proceedings pursuant to INA § 238(b), 8 U.S.C. § 1228(b), and charging him as removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), due to his conviction of an aggravated felony as defined in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B). The NOI advised that Bedolla must respond to the charges in writing within 10 calendar days of service (or 13 days if service was by mail), and that the response may, among other things, rebut the charges or request withholding of removal. The unsigned Certificate of Service accompanying the NOI does not indicate the date or manner of attempted service. A check-box indicates, however, that Bedolla refused to acknowledge receipt of the NOI.

On March 9, 2015, an ICE detention officer wrote a memorandum to the Assistant Field Office Director advising that the period for responding to the NOI had elapsed,

4

Bedolla had not filed a response, and a FARO should be signed. That same day, the Assistant Field Office Director signed the FARO. Although the Certificate of Service accompanying the FARO does not accurately reflect the date or manner of service, Bedolla avers that he received the FARO shortly after March 9, 2015.[1] Bedolla timely filed this petition for review on April 8, 2015, within thirty days of the date of the FARO.

Meanwhile, on March 17, 2015, at DHS's request, the Immigration Judge terminated the still-pending INA § 240 removal proceeding that had been initiated in February 2012. DHS then re-issued the FARO on April 20, 2015, and served

---

[1] The Certificate of Service at the bottom of the FARO appears to have been signed by the same Immigration Enforcement Agent who signed the NOI and bears the same date as the NOI, February 20, 2015, while the Order portion of the FARO was signed by the Assistant Field Office Director on March 9, 2015. It is not clear whether DHS attempted to serve Bedolla with an unsigned copy of the FARO on February 20, 2015 (service that Bedolla rejected) or whether there is an error on the certificate of service on the March 9, 2015, FARO. Although this might give rise to confusion, Bedolla has not argued that a FARO was issued on February 20, 2015, and he did not timely file a petition for review of any document issued on that date. Accordingly, this opinion considers the FARO that undisputedly was signed by the Assistant Field Office Director on March 9, 2015, was served upon Bedolla shortly thereafter, and from which Bedolla filed this petition for review.

it the following week upon Bedolla in person in York, Pennsylvania on April 27, 2015. Bedolla did not petition for review of the April 20, 2015, FARO.[2]

Bedolla expressed a fear of returning to Mexico. An Asylum Officer therefore conducted a reasonable fear interview on May 19, 2015, and, on June 3, 2015, denied Bedolla's reasonable fear claim. Bedolla requested a hearing before an Immigration Judge, which was held on June 8, 2015. The Immigration Judge found that Bedolla did not establish a reasonable possibility that he would be persecuted or tortured in Mexico, and therefore returned the case to DHS for Bedolla's removal. Bedolla later moved to re-open the proceeding and submit further evidence. The Immigration Judge denied reopening and Bedolla did not seek review of that decision.

---

[2] The same Assistant Field Office Director signed both versions of the FARO and prepared the Certified Official Record of Proceedings on behalf of DHS. The Certified Official Record of Proceedings does not include the copy of the March 9, 2015, FARO that we now review. This Court therefore has relied upon the copies of the March 9, 2015, FARO provided by Bedolla and which appears in the appendix to the Government's brief. The inaccuracies in the March 9, 2015, FARO and its omission from the official Certified Official Record of Proceedings are troubling. This Court requires an accurate administrative record in order to properly consider a petition for review. Agencies must be scrupulous in including all documents before certifying the record.

We have jurisdiction over questions of law and constitutional claims presented in this petition for review. *See* INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). On June 11, 2015, Bedolla moved to have this Court stay removal. The Government did not oppose that motion. On August 26, 2015, a panel of this Court granted a stay of removal pending further order of the Court.

## II.

Bedolla argues that DHS erred by placing him in expedited administrative removal proceedings because his crime is not an aggravated felony for purposes of removal under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). Whether a criminal conviction constitutes an aggravated felony for purposes of removal is a question of law subject to plenary review. *Thomas v. Attorney General*, 625 F.3d 134, 141 (3d Cir. 2010).

INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B), defines the term "aggravated felony" as, *inter alia*, "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." To determine whether Bedolla's crime qualifies as an aggravated felony, we first attempt to employ the formal categorical approach. *See Singh v. Ashcroft*, 383 F.3d 144, 147 (3d Cir. 2004) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)). This involves review of the statute of conviction without consulting other factual evidence. There are, however, situations in which a

7

statute of conviction is divisible, *i.e.*, it "sets out one or more elements of the offense in the alternative." *Descamps v. United States*, 33 S. Ct. 2276, 2281 (2013). Where the statute of conviction is divisible, a departure from the formal categorical approach is necessary and a modified categorical approach instead must be employed. *See Evanson v. Attorney General*, 550 F.3d 284, 291 (3d Cir. 2008).

The statute under which Bedolla was convicted, 35 Pa. Cons. Stat. § 780-113(a)(30), is divisible with regard to both the conduct and the controlled substances to which it applies. *United States v. Abbott*, 748 F.3d 154, 159 (3d Cir. 2014) ("Because [the statute] can be violated by the possession of and intent to distribute many different drugs, the types of which can increase the prescribed range of penalties, the statute includes several alternative elements and is therefore divisible."); *Catwell v. Attorney General*, 623 F.3d 199, 207 (3d Cir. 2010) (concluding the statute is divisible with regard to conduct because it describes distinct offenses of manufacture, delivery, and possession with intent to deliver or manufacture); *see also Garcia v. Attorney General*, 462 F.3d 287, 293 n.9 (3d Cir. 2006). Accordingly, we may "consult a limited class of documents . . . to determine which alternative [elements] formed the basis of the . . . conviction." *Descamps*, 133 S. Ct. at 2281.

We therefore will consider the charging document, plea agreement, and trial court judgment to determine the exact crime to which Bedolla pleaded guilty. *See Shepard v. United States*, 544 U.S. 13, 16 (2005); *Abbott*, 748 F.3d at 158. It is undisputed that, in Bedolla's case, the controlled substance in question was cocaine. Bedolla argues, however,

that his conviction was for conduct that does not qualify as an aggravated felony because he pleaded guilty to the mere possession of cocaine only. This argument is unavailing.

The statute of conviction, 35 Pa. Cons. St. § 780-113(a)(30), encompasses the following conduct: "manufacture, delivery, or possession with intent to manufacture or deliver" a controlled substance. With regard to possession, an intent to manufacture or deliver is an element of the offense. *Cf. Gerbier v. Holmes*, 280 F.3d 297, 299 (3d Cir. 2002). The relevant documents unequivocally establish that Bedolla pleaded guilty to possession with intent to deliver cocaine. For instance, the first charge of the criminal complaint accuses Bedolla of "Possession With Intent to Deliver COCAINE" in violation of 35 Pa. Stat. Ann. § 780-113(a)(30). The plea colloquy similarly describes the crime to which Bedolla pleaded guilty as "Possession w/ intent to deliver cocaine," a felony with a maximum ten-year sentence. In support of the plea, Bedolla admitted, "From 2/14 to 4/14 defendant did give [illegible] cocaine to another when not licensed to do so. Happened in Chester County PA," and his colloquy acknowledged both that his lawyer explained the elements of the offense to him and that he admitted that he committed the crime to which he pleaded guilty. Finally, the Court of Common Pleas sentencing sheet indicates that the charge was "PWID," which is obviously an acronym for "possession with intent to deliver," and is again listed as "Possession with Intent to deliver-cocaine, 2 grams," which is a grade "F" crime (a felony).

Having identified Bedolla's crime as the felony of possession with intent to deliver cocaine, we next employ the

framework for determining whether his conviction constitutes an aggravated felony. In *Gerbier*, 280 F.3d at 313, we held there are two independent but valid routes by which an offense may be found to qualify as an aggravated felony. The first, the illicit trafficking route, provides that a crime is an aggravated felony if it is a felony under state law and contains a trafficking element. *Id.* The second, the hypothetical federal felony route, provides that a crime is an aggravated felony if it would qualify as a felony under the Federal Controlled Substances Act. *Id.*

Bedolla argues that his conviction does not qualify as an aggravated felony because his crime does not contain a trafficking element. *See id.* at 299 (a state felony drug conviction qualifies as an aggravated felony if it contains a trafficking element). According to Bedolla, he did not commit a trafficking offense because he did not admit to the exchange of drugs for money. Yet we need not decide whether Bedolla's conviction is a trafficking offense because the hypothetical felony route leads us clearly to the conclusion that Bedolla's crime is an aggravated felony.

"Under the hypothetical federal felony route, we compare the offense of conviction to the federal Controlled Substances Act to determine if it is analogous to an offense under that Act." *Evanson*, 550 F.3d at 289. A Pennsylvania felony conviction of possession of a controlled substance with intent to deliver is analogous to 21 U.S.C. § 841(a)(1) of the Controlled Substances Act. *See Catwell*, 623 F.3d at 207-08; *Jeune v. Attorney General*, 476 F.3d 199, 205 (3d Cir. 2007). The Controlled Substances Act, 21 U.S.C. § 841(a)(1), provides that it is a crime to "manufacture, distribute, or

10

dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Where the controlled substance in question is cocaine, the crime is punishable by a term of imprisonment of "not more than twenty years," which qualifies as a felony.[3] 21 U.S.C. § 841(b)(1)(C) ("[I]n the case of a controlled substance in schedule I or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years. . . ."); *see also* 21 U.S.C. § 812 Schedule II (listing cocaine); 18 U.S.C. § 3559(a)(3) (providing that an offense for which the maximum term of imprisonment is less than twenty-five years but ten or more years is a Class C felony).

Because Bedolla was convicted of a crime analogous to the federal felony of possession with intent to distribute cocaine prohibited by § 841(a)(1) of the Controlled Substances Act, he committed an aggravated felony. Thus,

---

[3] Although Bedolla's crime involved a relatively small quantity of cocaine (2 grams), the federal Controlled Substances Act does not contain an exception for a conviction involving a small quantity of cocaine. In contrast, state convictions for possession with intent to deliver small amounts of marijuana for no remuneration may be subject to an express exception to the Controlled Substances Act. *See* 21 U.S.C. 841(b)(4); *Catwell*, 623 F.3d at 206-07 (a state conviction for distributing a small amount of marijuana without remuneration may not be analogous to a felony conviction under the Controlled Substances Act and therefore may not qualify as an aggravated felony under the hypothetical federal felony route).

11

Bedolla was properly subject to expedited administrative removal under INA § 238(b), 28 U.S.C. § 1228(b).

## III.

Next, Bedolla argues that the FARO is invalid because, at the time it was issued, the Executive Office for Immigration Review ("EOIR") and DHS simultaneously were conducting removal proceedings against him on two separate bases – as an alien present without being admitted (in an EOIR removal proceeding before an Immigration Judge under INA § 240) and as an aggravated felon (in an expedited administrative removal proceeding initiated by DHS under INA § 238). According to Bedolla, DHS and EOIR lack jurisdiction to concurrently adjudicate removal proceedings on separate bases involving the same individual. The government responds that no statute or regulation prohibits a period of brief concurrent proceedings before both DHS and the Immigration Judge, particularly where the two removal proceedings were commenced on independent grounds.

Whether the applicable regulations preclude concurrent removal proceedings presents a question of statutory interpretation subject to our de novo review. *Cheruku v. Attorney General*, 662 F.3d 198, 202 (3d Cir. 2011). In support of his claim, Bedolla relies primarily upon 8 C.F.R. § 238.1(e), which provides:

> In any proceeding commenced under section 240 of the Act which is based on deportability under section 237 of the Act, if it appears that the respondent alien is subject

12

to removal pursuant to section 238 of the Act, the immigration judge may, upon the Service's request, terminate the case and, upon such termination, the Service may commence administrative proceedings under section 238 of the Act. However, in the absence of any such request, the immigration judge shall complete the proceeding commenced under section 240 of the Act.

8 CFR § 238.1(e) (emphasis added). According to Bedolla, this regulation mandates that any proceeding before the Immigration Judge must be dismissed *before* DHS permissibly may initiate an expedited removal proceeding.

We need not decide whether Bedolla has properly interpreted this regulation. Bedolla overlooks a critical issue: the terms of 8 CFR § 238.1 do not apply to him. The regulation applies only to § 240 proceedings before an Immigration Judge that are "*based on deportability under section 237 of the Act*." (emphasis added). Bedolla's original removal proceeding was not based on INA § 237, 8 U.S.C. § 1227, which applies to "deportable aliens." Rather, Bedolla's removal proceeding before the Immigration Judge was based on INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), which applies to "inadmissible aliens," due to his status as an alien who had not been admitted or paroled. He was not the subject of a Section 237 proceeding; therefore, by its terms, 8 C.F.R. § 238.1 does not control.

Bedolla next looks to the regulations at 8 C.F.R. §§ 239.1 and 239.2, which govern the issuance and

13

cancellation of a notice to appear, the document that triggers proceedings before an Immigration Judge. For instance, 8 C.F.R. § 239.2(c) provides that "[a]fter commencement of proceedings pursuant to 8 C.F.R. § 1003.14 [concerning commencement of proceedings before an Immigration Judge], ICE counsel, or any officer enumerated in paragraph (a) of this section, may move for dismissal of the matter on the grounds set out under paragraph (a) of this section." Paragraph (a), in turn, permits cancellation of a notice to appear on a number of grounds, including that "[c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government." 8 C.F.R. § 239.2(a)(7).

We see nothing in these provisions directing that a proceeding before an Immigration Judge *must* be cancelled at a particular time. We certainly see nothing to support Bedolla's claim that the regulations "do not permit" a brief period in which an individual may face removal proceedings before both an Immigration Judge and DHS. These regulations simply do not address the issue of concurrently pending removal proceedings where, as here, the proceedings were based upon independent reasons for effecting removal.

In support of his interpretation of 8 C.F.R. § 239.2, Bedolla relies upon a decision by the Board of Immigration Appeals, *In re G-N-C*, 22 I & N Dec. 281 (BIA 1998). In *G-N-C*, the government moved to terminate a proceeding pending before an Immigration Judge so that it could reinstate a prior deportation order under INA § 241, based upon the petitioner's conviction of a crime of moral turpitude. *Id.* at

14

282-83. The day after the government filed the motion, without considering any response from the petitioner, the Immigration Judge summarily terminated the removal proceeding as unopposed. *Id.*

Upon review, the BIA determined that the Immigration Judge erred by terminating the proceeding at the government's request and without notice to the other side. The BIA concluded that, once proceedings have begun before an Immigration Judge, the government may move for dismissal only in the manner provided by 8 C.F.R. § 239.2:

> [A]fter commencement of proceedings in the Immigration Court, Service counsel "may move for dismissal of the matter on the grounds set out (in) this section." 8 C.F.R. § 239.2(c). This language marks a clear boundary between the time prior to commencement of proceedings, where a Service officer has decisive power to cancel proceedings, and the time following commencement, where the Service officer merely has the privilege to move for dismissal of proceedings. By this distinction, the regulation presumably contemplates not just the automatic grant of a motion to terminate, but an informed adjudication by the Immigration Judge or this Board based on an evaluation of the factors underlying the Service's motion.

Thus, the *G-N-C* decision addresses the proper manner in which an Immigration Judge may terminate one removal proceeding where a second is going forward. 22 I & N Dec.

15

at 284. It does not undermine our conclusion that 8 C.F.R. § 239.2 is silent as to whether concurrent removal proceedings may be permitted to proceed. Indeed, *G-N-C* recognizes that an Immigration Judge has the authority to deny a motion to terminate, which implies that two proceedings could be allowed to go forward simultaneously. *See* 22 I & N Dec. at 284 ("[T]he regulation presumably contemplates not just the automatic grant of a motion to terminate, but an informed adjudication by the Immigration Judge or this Board based on an evaluation of the factors underlying the Service's motion.").

Finally, Bedolla looks to INA § 238(b)(1), 8 U.S.C. § 1228(b)(1), which provides, "[t]he Attorney General may, in the case of an alien described in paragraph (2), determine the deportability of such alien under section 1227(a)(2)(A)(iii) of this title (relating to conviction of an aggravated felony) and *issue an order of removal pursuant to the procedures set forth in this subsection __or__ section 1229a of this title*." (emphasis added). According to Bedolla, the "or" at the end of this provision reflects a congressional intent to prohibit concurrent proceedings under both sets of procedures.

Once again, we do not interpret this language to prohibit the pendency of concurrent removal proceedings. Rather, this statute permits the government discretion to issue a final order of removal under either one of the two applicable provisions. In Bedolla's case, DHS chose to proceed by issuing a final order of removal under INA § 238(b), 8 U.S.C. § 1228(b), rather than under INA § 240, 8 U.S.C. § 1229a. This is consistent with the terms of the statute, and does not

16

compel a conclusion that the FARO is invalid solely because it was issued while a proceeding before an Immigration Judge remained pending.

## IV.

Finally, Bedolla argues that the conduct of simultaneous proceedings before the Immigration Judge and DHS resulted in a deprivation of his right to due process. We reject this claim. Bedolla has made no showing that he was prevented from reasonably presenting his case. *See Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir. 2002). Moreover, as we have concluded that there was no violation of the applicable statutes or regulations, Bedolla has failed to establish that he suffered a violation of any fundamental right. *Cf. Leslie v. Attorney General*, 611 F.3d 171, 178 (3d Cir. 2010) ("[V]iolations of regulations promulgated to protect fundamental statutory or constitutional rights need not be accompanied by a showing of prejudice to warrant judicial relief.").

## V.

For all of the foregoing reasons, the petition for review will be denied. The stay of removal previously imposed by a panel of this Court is hereby lifted.

17