**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1688
_____

UNITED STATES OF AMERICA

v.

SALVADOR ORTIZ-URESTI,
Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-16-cr-00418-001)
District Judge: Hon. Edward G. Smith

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 25, 2018

_____

Before: HARDIMAN, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: January 31, 2018)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

Salvador Ortiz-Uresti pleaded guilty to one count of illegal reentry after

deportation, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  He now appeals his forty-

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

eight month prison sentence on the ground that the District Court erred in concluding that his Colorado drug conviction constituted an "aggravated felony," and thereby incorrectly raised the statutory maximum sentence from two years' to twenty years' imprisonment. He also contends that the District Court erred in imposing a term of supervised release. For the reasons set forth below, we will affirm.

I

Ortiz-Uresti, a native and citizen of Mexico, pleaded guilty in 2000 to a drug offense in violation of Colo. Rev. Stat. Ann. § 18-18-405, and was sentenced to four years' imprisonment. A year later, he was removed from the United States to Mexico. In 2015, Ortiz-Uresti was arrested in Reading, Pennsylvania, pleaded guilty to state firearm and drug trafficking charges, and was sentenced to twenty-two to forty-eight months' imprisonment. After his arrest, he was interviewed by U.S. Immigrations and Customs Enforcement agents, and he admitted that he did not have permission to return to the United States and was in the country illegally.

Ortiz-Uresti was then charged in federal court with one count of illegal reentry after deportation, in violation of 8 U.S.C. § 1326, to which he pleaded guilty. At the plea hearing, the District Court asked the Government to identify the aggravated felony that triggered the enhanced maximum sentence under § 1326(b)(2). The Government stated that "in January of 2000, [Ortiz-Uresti] pled guilty to possession with intent to distribute a Schedule 2 controlled substance in the state of Colorado, and was sentenced to four years['] imprisonment in March of 2000." App. 22-23. Addressing Ortiz-Uresti, the District Court asked: "do you admit that you were in fact previously found guilty of

2

possession with intent to deliver . . . [i]n Colorado?" App. 23. Ortiz-Uresti replied "Yes," App. 23, and agreed with the Government that in 2000, he "was arrested, charged and convicted for a drug trafficking offense," App. 32. The District Court also asked Ortiz-Uresti whether he understood that because of his prior conviction for an aggravated felony, he faced a maximum sentence of twenty years' imprisonment, pursuant to § 1326(b)(2), and Ortiz-Uresti answered that he did.

Ortiz-Uresti's Presentence Investigation Report ("PSR") recommended applying an eight-level enhancement because he had been deported for a "felony drug distribution conviction." PSR ¶ 17. The PSR described the conduct underlying the charge as "possess[ing] with intent to distribute more than 25 grams but less than 450 grams of cocaine," PSR ¶ 28, calculated his guideline range at forty-six to fifty-seven months, and specified that he faced a statutory maximum term of imprisonment of twenty years.

At the sentencing hearing, Ortiz-Uresti's counsel confirmed that his client had no objections or corrections to the factual findings, guidelines calculation, criminal history category, or applicable statutory maximum in the PSR. The District Court sentenced Ortiz-Uresti to forty-eight months' imprisonment, to run consecutively to his state firearm and drug sentence, and a three-year period of supervised release, reasoning that his drug convictions, prior deportation, and subsequent reentry demonstrated that he lacked "good rehabilitative potential." App. 64-65. Ortiz-Uresti appeals.

II[1]

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## A

On appeal, Ortiz-Uresti argues for the first time that the District Court erred in concluding that his prior Colorado drug conviction qualified as an "aggravated felony." Because Ortiz-Uresti failed to preserve his objection in the District Court, our review is for plain error. Fed. R. Crim. P. 52(b); United States v. Couch, 291 F.3d 251, 252-53 (3d Cir. 2002). To establish plain error, Ortiz-Uresti must demonstrate: (1) an error; (2) that is clear or obvious; and (3) that affects his substantial rights. Gov't of the V.I. v. Mills, 821 F.3d 448, 456 (3d Cir. 2016). If all three prongs are satisfied, then our Court has discretion to remedy the error "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 457 (alteration and internal quotation marks omitted).

Ortiz-Uresti was convicted of illegally reentering the United States following deportation, in violation of 8 U.S.C. § 1326(a)(2). The statutory maximum prison sentence for this offense increases from two years to ten years if a defendant's prior removal "was subsequent to a conviction for commission of . . . a felony," id. § 1326(b)(1), and to twenty years if the removal followed "a conviction for commission of an aggravated felony," id. § 1326(b)(2).

To determine whether a prior conviction qualifies as an aggravated felony, courts typically "first attempt to employ the formal categorical approach[, which] involves review of the statute of conviction without consulting other factual evidence." Avila v. Att'y Gen., 826 F.3d 662, 666 (3d Cir. 2016) (citation omitted). The categorical approach asks "whether the state statute defining the crime of conviction categorically

4

fits within the generic federal definition of a corresponding aggravated felony."

Moncrieffe v. Holder, 569 U.S. 184, 190 (2013) (citation and internal quotation marks omitted). "There are, however, situations in which a statute of conviction is divisible, i.e., it 'sets out one or more elements of the offense in the alternative,'" Avila, 826 F.3d at 666 (quoting Descamps v. United States, 133 S. Ct. 2276, 2281 (2013)), rather than a "single, indivisible set of elements," Descamps, 133 S. Ct. at 2282. "Where the statute of conviction is divisible," Avila, 826 F.3d at 666, courts "may look beyond the face of the statute to the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented' to determine which of the alternative elements was involved in the defendant's conviction," United States v. Abbott, 748 F.3d 154, 158 (3d Cir. 2014) (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)). The modified categorical approach, with its consideration of these documents, "renders opaque which element played a part of the defendant's conviction." Descamps 133 S. Ct. at 2283; Abbott, 748 F.3d at 158. Thus, we must next determine whether the Colorado drug statute is divisible.

At the time of Ortiz-Uresti's conviction, the Colorado statute provided that it was unlawful for a person to knowingly

> manufacture, dispense, sell, distribute, possess, or to possess with intent to manufacture, dispense, sell, or distribute a controlled substance; or induce, attempt to induce, or conspire with one or more other persons, to manufacture, dispense, sell, distribute, possess, or possess with intent to manufacture, dispense, sell, or distribute a controlled substance.

Colo. Rev. Stat. Ann. § 18-18-405(1)(a) (1992). The punishment for violating this provision varied based upon the type and amount of the substance involved. For

5

example, an individual whose violation involved cocaine, a Schedule II controlled substance, id. § 18-18-204(2)(a)(IV), committed a class 3 felony, which carried a sentence of four to twelve years' imprisonment, unless the conduct involved at least twenty-five grams but less than four hundred fifty grams of cocaine, in which case the offender faced a mandatory minimum term of four years. Id. § 18-18-405(2)(a)(I), (3)(a). Thus, a specific amount of cocaine triggered, among other things, whether a mandatory minimum sentence applied. "[A]ny facts that increase the prescribed range of penalties to which a criminal defendant is exposed are elements of a crime." Alleyne v. United States, 133 S. Ct. 2151, 2160 (2013) (citations and internal quotation marks omitted). Because the statute can be violated by the distribution of many types of drugs and the type and amount of drugs can increase the punishment, the statute includes several alternative elements and is therefore divisible.[2] Abbott, 748 F.3d at 159; see also Mathis

---

[2] The Colorado Supreme Court has examined whether the Colorado statute is divisible and has reached conflicting results. Compare People v. Abiodun, 111 P.3d 462, 466 (Colo. 2005) (holding that the statute defines a single offense for double jeopardy purposes because it is "structured as a series of acts, with reference to the same controlled substance and governed by a common mens rea," and the "acts chosen for specific inclusion are not themselves mutually exclusive but overlap in various ways and cover a continuum of conduct from the production of a controlled substance to its delivery to another person, under any of a number of circumstances") with People v. Valenzuela, 216 P.3d 588, 592-93 (Colo. 2009) (holding that because "the structure of the offense provision makes clear that three distinct categories of actions are criminalized," a sentencing enhancement for extraordinary risk of harm applied only to one portion of the crime). These decisions, however, predate the United States Supreme Court's decisions in Alleyne, Descamps, and Mathis, and therefore do not reflect how more current law would apply to this statute.

Our sister circuit recently analyzed the 2014 version of the Colorado statute, which is materially similar to the 1999 version applicable to Ortiz-Uresti's prior conviction, and concluded that the statute is indivisible. United States v. McKibbon, 878 F.3d 967 (10th Cir. 2017). The court, however, relied only on the Colorado Supreme

6

v. United States, 136 S. Ct. 2243, 2256 (2016) (stating that "[i]f statutory alternatives carry different punishments, then under Apprendi they must be elements"). Because the statute is divisible, we may look at the charging instrument and other documents to determine which alternative elements had to be proven.

Here, the charging instrument specified that the drug allegedly distributed was "cocaine" and the quantity was "at least twenty-five grams but less than four hundred fifty grams." Supp. App. at 6. Thus, Ortiz-Uresti was convicted of distributing an amount of cocaine that carried a mandatory minimum term of four years' imprisonment.

We must next determine whether such a crime constitutes an "aggravated felony" under 8 U.S.C. § 1101(a)(43). The definition of an "aggravated felony" includes "illicit trafficking in a controlled substance . . . including a drug trafficking crime." Id. § 1101(a)(43)(B). A drug trafficking crime, in turn, is defined as "any felony punishable under the Controlled Substances Act." Moncrieffe, 569 U.S. at 188 (quoting 18 U.S.C.

---

Court's decision in Abiodun and did not address the more recent decision in Valenzuela, which held that the statute criminalizes "three distinct categories of actions" and therefore casted doubt on Abiodun. Moreover, the McKibbon court appears to have overlooked the teachings of Alleyne, Descamps, and Mathis, which dictate that any fact that impacts a statutory sentencing range is an element of the offense. Here, because the penalty for violating the statute varies depending on the type and quantity of drug involved in the offense, the statute is divisible. Although one means for violating the statute may not be a "drug trafficking crime," we can apply the modified categorical approach, look at the charging instrument, and see that Ortiz-Uresti was convicted not of a mere offer to sell, but of possessing with intent to distribute an amount of cocaine that carried a mandatory minimum term of four years' imprisonment. See United States v. Blair, 734 F.3d 218, 225-26 (3d Cir. 2013) (in determining whether a defendant's prior conviction constitutes a violent felony using the modified categorical approach, a court may examine the entire charging document because "the blinders are already off, and there is no requirement to pretend otherwise"). Thus, Ortiz-Uresti's prior conviction qualifies as a "drug trafficking crime."

7

§ 924(c)(2)). A "state offense constitutes a felony punishable under the Controlled Substances Act only if it proscribes conduct punishable as a felony under that federal law." Lopez v. Gonzales, 549 U.S. 47, 60 (2006) (internal quotation marks omitted). Courts ordinarily use either the "illicit trafficking" or "hypothetical federal felony" tests to determine whether a state drug statute qualifies as a felony punishable under the Controlled Substances Act. Avila, 826 F.3d at 667.

We need not apply the illicit trafficking test to Ortiz-Uresti's conviction because the "hypothetical felony route leads us clearly to the conclusion that [his] crime is an aggravated felony." Id. A Colorado conviction for distribution of a controlled substance "is analogous to 21 U.S.C. § 841(a)(1) of the Controlled Substance Act," which provides that it is a crime to "distribute . . . a controlled substance." Id. "Where the controlled substance in question is cocaine, the crime [under § 841] is punishable by a term of imprisonment of 'not more than twenty years,' which qualifies as a felony." Id. at 667-68 (quoting 21 U.S.C. § 841(b)(1)(C)). Because Ortiz-Uresti's crime of conviction is analogous to the federal felony of distribution of cocaine prohibited by 21 U.S.C. § 841 and was punishable by a term exceeding one year,[3] he committed an aggravated felony, and the District Court did not err in sentencing him in accordance with 8 U.S.C. § 1326(b)(2).

---

[3] A crime punishable by a term exceeding one year is a felony under federal law. See 18 U.S.C. §§ 3559, 3581; Moncrieffe, 569 U.S. at 188.

B

Ortiz-Uresti also argues that the District Court erred in imposing a three-year term of supervised release because, as a deportable immigrant, he was presumptively exempt from such supervision. Ortiz-Uresti failed to preserve this challenge, so we review for plain error. United States v. Azcona-Polanco, 865 F.3d 148, 151 (3d Cir. 2017).

In Azcona-Polanco, our Court recently clarified a sentencing court's procedural obligations in imposing a term of supervised release under U.S.S.G. § 5D1.1(c), which creates a presumption against supervised release in the case of a deportable immigrant. 865 F.3d at 152-53; U.S.S.G. § 5D1.1(c) ("The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment."). We held that a sentencing court "must explain and justify the imposition of supervised release on a deportable immigrant," and must "state the reasons in open court for imposing a term of supervised release on a deportable immigrant so that the appellate court is not left to speculate about the reasons." Id. at 153 (alterations and internal quotation marks omitted). The sentencing court's explanation "should directly address the presumption against imposing supervised release and provide the court's reasoning for taking a different course of action in the case before it." Id. (internal quotation marks omitted).

Even though the District Court did not have the benefit of our explanation in Azcona-Polanco, the District Court's findings as to Ortiz-Uresti's history of recidivism upon his reentry into the United States and the need to deter future criminal conduct provided its reasons for imposing a sentence that included supervised release and thus its

9

ruling was consistent with our teachings in that case. The District Court stated that it was "particularly concern[ed]" by the "criminal activities of the defendant, both of which led to the deportation, then a re-entry, and then additional criminal offenses." App. 64. The District Court also noted that Ortiz-Uresti "is currently serving a sentence as a result of the additional criminal activity that he engaged in after he had returned back to the United States in violation of the law[.]" App. 64. Therefore, although the District Court did not explicitly mention the presumption against supervised release for a deportable immigrant like Ortiz-Uresti, its findings reflect an understanding of that presumption, and its explanation provides us its reasons for imposing a term of supervised release. Thus, the District Court did not err.

## III

For the foregoing reasons, we will affirm.