**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1752
_____

DWAYNE ANTHONY WALTERS,
　　　　　　　　　　　　　　　　Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
　　　　　　　　　　　　　　　　Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A077-923-559)
Immigration Judge:  Honorable Michael Straus
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 26, 2018
Before:  CHAGARES, BIBAS, and GREENBERG, Circuit Judges

(Opinion filed: March 26, 2019)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Dwayne Walters petitions for review of the Board of Immigration Appeals' (BIA) order dismissing his appeal from an immigration judge's (IJ) decision denying his application for relief under the Convention Against Torture (CAT). For the reasons that follow, we will deny the petition.

Walters, a citizen of Jamaica, entered the United States in 2003 as a nonimmigrant visitor with authorization to stay six months. He never left. In 2009, he was convicted in the Court of Common Pleas of Philadelphia of the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance in violation of 35 Pa. C.S.A. § 780-113(a)(30). In 2011, after his release from state prison, he was again convicted of the same offense. In May 2015, the Department of Homeland Security (DHS) served Walters with a Form I-851 Notice of Intent to Issue a Final Administrative Removal Order (FARO) under 8 U.S.C. § 1228(b), the expedited removal statute. The Notice of Intent charged him with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of a drug trafficking aggravated felony. Walters signed the notice and, pursuant to the check-boxes, did not rebut the charges by contesting his removability, but requested withholding of removal under the CAT. See 8 C.F.R. §§ 238.1(c), 1208.16(c). He was referred to an asylum officer for a credible-fear interview, based on his statement that he feared he would be tortured if he were returned to Jamaica. See 8 C.F.R. §§ 238.1(f)(3), 208.31. The asylum officer referred the case to an Immigration Judge (IJ) for full consideration of the request for relief from removal. See 8 C.F.R. § 208.31(e). No FARO was issued at that time.

2

An IJ conducted "withholding only" proceedings, at which Walters testified that he feared he would face torture in Jamaica at the hands of a gang. The IJ concluded that Walters had not met his burden of proof on his CAT claim. The Board remanded, finding that the IJ had failed to consider evidence, including documentation supporting Walters' "U visa" application, which it deemed "central" to his CAT claim.[1] On remand, the IJ held another hearing and, again, denied relief. On appeal, the BIA determined that the IJ failed to consider all of the evidence in the record, including articles regarding gangs and corruption in Jamaica, and remanded the matter. The IJ's final opinion set forth all of the evidence he considered, but concluded that it was insufficient to establish that Walters would more likely than not face torture in Jamaica. The BIA affirmed on appeal, finding no clear error in the IJ's determination, and this proceeding ensued. On May 5, 2017, while this matter was pending, DHS "executed and served" a FARO on Walters.

I.

In addition to challenging the denial of his CAT claim, Walters challenges the FARO on the basis that he is not an aggravated felon as defined in 8 U.S.C. § 1101(a)(43)(B). Pursuant to 8 U.S.C. § 1252(b)(1), we lack jurisdiction over a petition that is filed more than 30 days after the BIA's final order of removal. Here, the FARO was issued on May 5, 2017, *after* the petition for review was filed. With respect to the denial of his CAT claim, the premature petition for review ripened upon issuance of the FARO.

---

[1] A U-Visa allows noncitizen victims of certain crimes who have suffered "substantial physical or mental abuse," and who have been helpful to law enforcement in investigating or prosecuting the crime, to remain in the United States as lawful temporary residents. See 8 U.S.C. § 1101(a)(15)(U). Walters' U-Visa application was denied in August 2017.

See Khan v. Att'y Gen., 691 F.3d 488, 493 (3d Cir. 2012). Notably, the Government concedes a lack of prejudice, see id., admitting that the delay in issuing the FARO was attributable to DHS's failure to "complete the process," and urging this Court to "proceed[ ] with the review petition" because "Walters has been afforded all the same rights and privileges as if the Final Administrative Order had been executed and served in May 2015."

Turning to his challenge to the FARO,[2] the INA defines "aggravated felony," in relevant part, as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). Section 924(c) in turn defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act" (CSA). 18 U.S.C. § 924(c)(2). Under the hypothetical federal felony route – one of two tests used to determine whether a state drug offense constitutes an aggravated felony – this Court determines whether the offense of conviction is analogous to a conviction under the CSA. See Avila v. Att'y Gen., 826 F.3d 662, 667 (3d Cir. 2016). Walters was convicted under 35 Pa. C.S.A. § 780-113(a)(30), which prohibits the "manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance." The analogous federal statute makes it a crime to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance." 21 U.S.C. § 841(a)(1); see Wilson v. Ashcroft, 350 F.3d 277, 381 (3d Cir. 2003).

---

[2] We have jurisdiction to determine whether Walters is an aggravated felon. See Etienne v. Lynch, 813 F.3d 135, 138-42 (4th Cir. 2015); Victoria-Faustino v. Sessions, 865 F.3d 869, 873 (7th Cir. 2017).

Walters argues that his conviction under § 780-113(a)(30) cannot qualify as an aggravated felony under the INA because such a conviction cannot rest upon mere possession, which is not a federal felony. See 21 U.S.C. § 841(b)(4); cf. Steele v. Blackman, 236 F.3d 130, 137 (3d Cir. 2000) (noting that distributing a small amount of marijuana without remuneration is treated as a simple possession offense, not a felony, under the CSA). This argument rests on a misunderstanding of § 780-113(a)(30), which criminalizes possession with intent to manufacture or deliver, not mere possession. Avila, 826 F.3d at 666 ("with regard to possession [under § 780-113(a)(30)], an intent to manufacture or deliver is an element of the offense").

Walters does not dispute that his offense involved oxycodone. In any event, the Pennsylvania statute is divisible, and, therefore, we may use the modified categorical approach to determine the basis for the conviction. Id. Under this approach, we may review the charging documents and the plea colloquy, which make clear that Walters was convicted of the felony of possession with intent to deliver oxycodone. See Descamps v. United States, 570 U.S. 254, 261, 265 (2013). Such a crime, which is subject to a 20-year maximum sentence under the CSA, see 21 U.S.C. § 841(b)(1)(C); 21 C.F.R. § 1308.12, qualifies as an aggravated felony. See Avila, 826 F.3d at 667.

Because Walters is an aggravated felon, our jurisdiction here is limited to constitutional claims and questions of law. Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010). We may not review questions of fact. See id. When, as here, the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's opinion, our review encompasses both decisions. See Guzman v. Att'y Gen., 770 F.3d 1077, 1082 (3d Cir. 2014).

## II.

To succeed on his CAT claim, Walters had to establish that it is "more likely than not" that he would be tortured should he return to Jamaica. 8 C.F.R. § 208.16(c)(2); Sevoian v. Ashcroft, 290 F.3d 166, 174–75 (3d Cir. 2002). He also needed to show that the torture would be inflicted "by or at the instigation of or with the consent or acquiescence of a public official . . ." See 8 C.F.R. § 208.18(a)(1).

In support of his claim, Walters testified that he was a drug courier in Philadelphia, for four years, for a Jamaican gang led by John Pinnock. According to Walters, Pinnock, who is also Jamaican, uses his family members in Jamaica to smuggle weapons into that country, and drugs into the United States. Walters also testified that he heard Pinnock boast about having strong ties to individuals in the Jamaican government, and "loyal family and gang members there." According to Walters, in November 2012, Pinnock sent three men to attack him because he had not collected a drug payment owed to Pinnock. These men "smack[ed] him with their guns," burned him with a cigarette, and attempted to burn his heels with a lighter. As they pushed him into a car, Walters attempted to flee, but was then shot in the back.

Walters testified against his assailants at their criminal trial, resulting in their conviction, despite threats that he "would be executed" for doing so. He maintained that, after the trial, he was labeled a "snitch" and a "sellout," and that the assailants "put a bounty" on him. A.R. at 384. He testified that he received a direct call from Jamaica threatening that they "will get him," and that he will be "skinned alive" if he returns there. A.R. at 385. He contended that he will be tortured and killed by Pinnock's gang if he is returned

6

to Jamaica because Pinnock's gang is "very influential with the cops and the government" there. A.R. at 385. According to Walters, officials are on Pinnock's payroll, enabling him to traffick the guns and drugs. Id.

Throughout his briefs, Walters maintains that the Agency erred in failing to give sufficient weight to certain record evidence, including his testimony. These arguments do not implicate constitutional or legal issues. The question of "what is likely to happen to the petitioner if removed" is a factual question. Kaplan v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010); see also Jarbough v. Att'y Gen., 483 F.3d 184, 189 (3d Cir. 2007) (recognizing that arguments such as that the Agency incorrectly weighed evidence is not a question of law under § 1252(a)(2)(D)). We thus lack jurisdiction to consider such claims.

Walters also argues that the IJ erred in failing to consider his testimony connecting Pinnock and his gang to Jamaica. See. See 8 C.F.R. § 208.13(a). This is a legal claim which we may consider. See Green v. Att'y Gen., 694 F.3d 503, 508 (3d Cir. 2012) (distinguishing a factual claim of a failure to give weight to certain evidence from a legal claim of failure to consider evidence). Walters admits in his brief that he "didn't have a lot of corroborating evidence" on this issue, but emphasizes that he "did share [his first] hand knowledge" and his "testimony was found to be credible." See 8 C.F.R. § 1208.16(c)(2) ("[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration"). The Board noted Walters' testimony that Pinnock had strong familial and political ties to Jamaica. BIA Op. at 3; A.R. at 385. And we agree with its conclusion that the IJ considered the testimony but found Walters' "own beliefs, while

7

credible," to be insufficient, absent further corroboration, to establish that these connections actually existed. See Abdulai v. Ashcroft, 239 F.3d 542, 552 (3d Cir. 2001) ("[s]aying that something may be enough is not the same as saying that it is always enough; in fact, the most natural reading of the word 'may' in this context is that credible testimony is neither per se sufficient nor per se insufficient"). Because the Agency gave consideration to his testimony on this issue, we find no legal error.

Walters next contends that the Agency employed an incorrect legal standard in determining that the Jamaican government would not "acquiesce" to his torture. Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 312 (3d Cir. 2011). The IJ concluded that "[t]here is no evidence in this record that government officials in Jamaica are in cahoots with Mr. Pinnock or his organization." IJ Op. at 2. Walters argues that, in so holding, the IJ failed to consider that Jamaican government officials could acquiesce to his torture through "willful blindness." See Silva-Rengifo v. U.S. Att'y Gen., 473 F.3d 58, 70 (3d Cir. 2007). He raised this issue on appeal to the Board. It is clear from the record that the IJ's comment was in reference to Walters' testimony regarding his impression that Jamaican police and gangs are "always in cahoots together." A.R. at 377. We agree with the Board that the IJ cited to, and correctly applied, the willful blindness standard, and that the IJ's "shorthand statement was intended to mean that the evidence did not show that public officials would acquiesce to torture by this claimed gang," where it had found insufficient evidence linking Pinnock or his gang to Jamaica. BIA Op. at 4.

Finally, we reject Walters' due process claims. The record in this case, including two remands by the Board, belies his claim that it was "rush[ed]" by the Agency. And

8

contrary to his contention, on remand, the IJ fully addressed the errors noted by the Board.

To the extent Walters is alleging that the IJ was biased, we lack jurisdiction to consider the

claim because he failed to raise it before the Board.[3]  See Abdulrahman, 330 F.3d at 595

n.5 (noting that a claim of IJ bias is subject to administrative exhaustion requirements).

      Based on the foregoing, we will deny the petition for review.[4]

---

[3] We lack jurisdiction to consider Walters' alternative basis for CAT relief – that he would face persecution or torture on the basis of his bisexuality – raised for the first time in his brief.  See 8 U.S.C § 1252(d)(1); Abdulrahman v. Ashcroft, 330 F.3d 587, 594-05 (3d Cir. 2003).

[4] The Government's motion to dismiss the petition for lack of jurisdiction, filed before Walters ultimately submitted his operative appellate brief, is denied.