**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3015
_____

ELIJAH HARMON,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-570-033)
Immigration Judge:  Kuyomars Golparvar
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 4, 2020

Before: KRAUSE, MATEY, and ROTH, Circuit Judges

(Opinion filed: February 2, 2021)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Elijah Harmon, proceeding pro se, petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of a decision of an Immigration Judge ("IJ") ordering his removal and denying his application for relief from removal. For the reasons that follow, we will deny the petition for review.

Harmon is a native and citizen of Liberia. He was admitted to the United States in 2004 as a refugee. Harmon's father, who was admitted as a refugee, filed a derivative petition on his behalf. The Department of Homeland Security issued a notice to appear in June 2018 alleging that Harmon was convicted in January 2018 in Pennsylvania state court of the manufacture, delivery, or possession with intent to manufacture or deliver heroin in violation of 35 Pa. Stat. § 780-113(a)(30). DHS charged Harmon with being subject to removal because he was convicted of an offense relating to the illicit trafficking of a controlled substance, an aggravated felony. See 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii). The IJ found that Harmon had been convicted of the alleged offense and that he is removable as charged.

Harmon, proceeding pro se, applied for asylum, withholding of removal, and relief under the Convention Against Torture. At his hearing, Harmon, who was born in 1990, stated that he was abducted in 1999 or 2000 by a group named Law Rebel and forced to be a soldier during the civil war in Liberia. Harmon said that he was beaten and tortured because he would not kill other people, and that he was reunited with his mother in 2003 after another group captured and helped him. Harmon then lived in Liberia and went to

2

school. He came to the United States in 2004 to live with his father, who had been admitted in 2000. Although the civil war had ended, Harmon stated that there is still criminal activity in Liberia, that he fears rebel leaders who are now in the government, and that the leader of Law Rebel is in Liberia.

On cross-examination, the Government noted that Harmon's affidavit stated that he was forced to participate in raids and protect houses and offices for the rebel group. Harmon said that he only carried food and supplies that others had taken. The Government also produced documents that his father had submitted when he applied for derivative refugee status on Harmon's behalf, including a baptismal certificate and school record issued on dates during the time period in which Harmon said that he was a soldier, and a form reflecting that Harmon had lived in Guinea from 1995 to 2000. Harmon said that he had forgotten that he had lived in Guinea.

Harmon's father also testified. He said that he, his wife, and Harmon lived together in a town near the Guinea border, that they were separated during an attack in 2000, that he had fled to Guinea, and that his wife and Harmon fled and lived in Liberia. Harmon's father also said that he married his wife in Guinea in 2000 and that she had left Harmon for several months with a family member in Liberia. Harmon's father came to the United States in October 2000 and his wife sent him the baptismal certificate and school record. He said that Harmon and his wife were living together in Liberia after he arrived in the United States, that he never lived with Harmon in Guinea, and that he did

not know that rebels had captured Harmon.

The IJ found Harmon not credible. He explained that Harmon's affidavit and testimony were inconsistent as to his participation in the rebel group's activities and that there was conflicting evidence as to whether he had lived in Guinea. The IJ found Harmon's father credible and noted that he did not know about Harmon's involvement with Law Rebel and had said that Harmon lived with his mother. The IJ also stated that the baptismal certificate and school record contradicted Harmon's testimony.

The IJ gave Harmon's testimony almost no weight in considering his application for deferral of removal under the CAT.[1] The IJ reviewed the country report and found that the circumstances in Liberia, which included transitions in power, had changed significantly since 2004. Applying Myrie v. Att'y Gen., 855 F.3d 509 (3d Cir. 2017), the IJ found that nothing is likely to happen to Harmon if he is removed. The IJ found that he had not been a child soldier, and that even if he had been, the war is over and there is no indication that he would be harmed for that reason. The IJ stated that he did not find that Harmon was harmed in the past and noted that Harmon had said that he had lived in Liberia for over a year after he was allegedly rescued. The IJ also stated that what is likely to happen to Harmon would not amount to the legal definition of torture. The IJ

---

[1] The IJ found that Harmon was convicted of a "particularly serious crime" and is thus ineligible for withholding of removal. The IJ also denied asylum on this basis and because Harmon committed an aggravated felony. Harmon does not dispute that he was convicted of a particularly serious crime, and these rulings are not at issue.

explained that he would have a transition but that he would acclimate and there was no indication that the government or the former leader of the rebel group would harm him. The IJ ruled that he could not find that it is more likely than not that Harmon would be tortured.

On appeal, the BIA upheld the IJ's rulings that Harmon was convicted of an aggravated felony and that he did not establish eligibility for deferral of removal. The BIA found no clear error in the IJ's adverse credibility finding in light of the inconsistencies in the record or in the finding that Harmon would not be tortured. The BIA also noted that there is evidence of the political influence of former warlords, but that the record did not support a claim that former child soldiers are tortured.

Harmon filed a pro se petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because Harmon is removable for having committed an aggravated felony, our jurisdiction is limited to constitutional and legal challenges to the final order of removal. 8 U.S.C. § 1252(a)(2)(C), (D); Nasrallah v. Barr, -- U.S. --, 140 S. Ct. 1683, 1687–88 (2020). We also have jurisdiction to review constitutional, legal, and factual challenges to an order denying relief under the CAT. Nasrallah, 140 S. Ct. at 1688. We review Harmon's constitutional and legal challenges de novo, Myrie, 855 F.3d at 515, and his factual challenges for substantial evidence. Nasrallah, 140 S. Ct. at 1692.[2]

_____

[2] Before Nasrallah was decided, the Government moved to dismiss Harmon's petition for review for lack of jurisdiction. In light of the Supreme Court's decision and the legal issue discussed below, the motion to dismiss is denied.

Harmon appears to challenge the legal determination that his offense is an aggravated felony.  See Brief at 6.  A state drug conviction constitutes an aggravated felony if "it would be punishable as a felony under the federal Controlled Substances Act. . . ." Evanson v. Att'y Gen., 550 F.3d 284, 288 (3d Cir. 2008).  The BIA found the statute of conviction, 35 Pa. Stat. § 780 -113(a)(30), which prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance," analogous to 21 U.S.C. § 841(a)(1), which makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  The BIA applied the modified categorical approach, found that the controlled substance involved was heroin, a drug listed in 21 U.S.C. § 812, Schedule I, and ruled that Harmon committed an aggravated felony.

We have determined that § 780-113(a)(30) is divisible with regard to the conduct to which it applies and the type of drug involved, which can increase the prescribed range of penalties.  Avila v. Att'y Gen., 826 F.3d 662, 666 (3d Cir. 2016).  When a statute is divisible, we may apply the modified categorical approach and "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016).

The administrative record includes the information and a "Criminal Court Sheet" signed by the trial judge, which reflects Harmon's sentence of one year less one day to

6

two years less one day for Count 1 of the information.  Count 1 charged Harmon with manufacture, delivery, or possession with intent to manufacture or deliver heroin.  The charge designates the offense with an "F" for felony.  Although the record does not establish whether Harmon was convicted of manufacture, delivery, or possession with intent to manufacture or deliver heroin, a conviction of any of these offenses is analogous to a conviction under 21 U.S.C. § 841(a)(1).  See Avila, 826 F.3d at 667 (a Pennsylvania felony conviction of possession of a controlled substance with intent to deliver is analogous to § 841(a)(1)); see also United States v. Glass, 904 F.3d 319, 323 (3d Cir. 2018).  Because the substance involved in Harmon's offense was heroin, a Schedule I drug, the offense would be punishable as a felony under the Controlled Substances Act.  See Avila, 826 F.3d at 667–68.  The BIA did not err in ruling that Harmon's conviction is an aggravated felony.[3]

Harmon disputes the IJ's adverse credibility finding and asserts that the country report supports his claim that he will be harmed if removed.  He contends that he could not have provided documentary evidence to show that he was a child soldier as none exists.  He states that his father testified that he and his mother were threatened, that his father could not have known that he was captured because he was in the United States, and that he and his father did not speak until he came here in 2004.  Harmon also

---

[3] To the extent Harmon contends that 8 U.S.C. § 1101(a)(43)(B), which defines aggravated felony as illicit trafficking in a controlled substance, is unconstitutional, see Brief at 6, we need not address this contention because he presents no supporting

questions the accuracy of the documents that his father submitted with the petition filed on his behalf in light of his father's testimony that he had help preparing it.

We must uphold the agency's factual findings unless "any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah, 140 S. Ct. at 1692. This highly deferential, substantial evidence standard applies to the adverse credibility finding, Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003), and the finding that Harmon will not be harmed if removed. See Myrie, 855 F.3d at 516.

The administrative record does not compel the conclusion that Harmon testified credibly or that he would be harmed if removed. As the BIA recognized, Harmon's testimony that Law Rebel abducted him in 1999 or early 2000 and held him until 2003 is inconsistent with a certificate reflecting that he was baptized in 2001 and a school record showing that he enrolled in school in August 2000. To the extent Harmon suggests that these documents are false, the record does not support that conclusion. Although the form stating that Harmon had lived in Guinea was called into question by his father's testimony, there is no evidence raising a question as to the authenticity of the certificate and school record. Moreover, Harmon's father testified that he spoke to his wife when he was in the United States, that she and Harmon lived together during that period, and that he was unaware of the abduction. Accepting the adverse credibility finding, Harmon would be treated the same as any citizen in Liberia and he did not show based on the

---

argument. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

country conditions that it is more likely than not that he would be tortured. <u>See</u> <u>Tarrawally v. Ashcroft</u>, 338 F.3d 180, 188 (3d Cir. 2003).

Harmon also responds to the Government's argument before the IJ that, if credible, he is ineligible for relief because he committed war crimes as a child soldier. The IJ did not reach this issue and it is not before us. In addition, Harmon argues that his criminal counsel was ineffective, but he may not collaterally attack his state conviction in these proceedings. <u>See</u> <u>Drakes v. I.N.S.</u>, 330 F.3d 600, 606 (3d Cir. 2003).

Accordingly, we will deny the petition for review.